CITY OF GREENSBORO v. A. D. GARRISON AND ROXIE M. GARRISON, HIS WIFE.

(Filed 25 November, 1925.)

**1. Evidence—Opinion.**

The evidence of witnesses who have had observation of certain conditions relevant and material to the inquiry involved in the action, is more broadly received now than heretofore, upon the ground that it is more enlightening to the jury who could not have had this opportunity, and aids them in their conclusion.

**2. Same—Municipal Corporations—Cities and Towns—Condemnation—Damages.**

Upon the measure of damages to be paid to the owner for the taking of his land for a ditch to be used by a city in connection with its public works, it is competent for a witness to state that before the final completion of the ditch, he had observed the property, and to give his estimate of the difference in value of the owner's land just before and after the time of its appropriation.

**3. Same—Appeal and Error—Harmless Error.**

Upon the question of the measure of damages to be paid to the private owner of land for its taking by a city for public use, it is harmless error to the city to reject its testimony tending to show the owner's idea of his damages in a conversation with an employee of the city, authorized by it as its agent in this matter, when the other evidence in the case sufficiently covers the evidence sought to be elicited.

APPEAL by plaintiff from *McElroy, J.,* at March Term, 1925, of GUILFORD.

Under authority conferred by Private Laws 1925, ch. 37, the city of Greensboro instituted a proceeding to condemn a right of way ten feet wide over the land of the respondents for. the construction of a sewer line connecting Arlington and Vance streets. Appraisers were appointed and they made their report, assessing damages. To this award the city and the property owners excepted, and appealed to the Superior Court. It was admitted upon the trial that the respondents are the owners in fee of the land described in the pleadings; that the city has the right of condemnation; that the proceeding was regular; and that only the issue of damages · was to be determined. The jury heard the evidence and assessed damages. Judgment was rendered for owners of the property, and the city appealed assigning error.

*Fentress & Moseley for appellant.*
*Frazier & Frazier for appellees.*

ADAMS, J. G. C. Hill, a witness for the respondents, went to Garrison's home and looked over the premises while the ditch was open. On

the direct examination he was permitted after objection to express his opinion as to the difference in the fair market value of the property just before and just after the construction of the sewer. He testified on the cross-examination: "I do not know of my own knowledge that this ditch has ever been closed up. I judge that the ditch has been closed up. I am basing my estimate on the ditch open, that is, when I saw it." On the redirect examination, in answer to a hypothetical question to which there was no objection, he gave his estimate of the decreased value of the property on the assumption that the sewer line had been laid and the ditch closed.

McKelvey, in his work on Evidence, 231, observes there are two classes of witnesses who are ordinarily spoken of as experts,—one class embracing these persons who, by reason of special opportunities for observation, are in a position to judge of the nature and effect of certain matters better than persons who have not had opportunity for like observation. Referring to the subject in *Harper v. Lenoir,* 152 N. C., 723, 730, the Court said: "Evidence of this character from witnesses who have had personal observation of relevant facts and conditions, and whose opinion is calculated to aid the jury to a correct conclusion, is coming to be more and more regarded as competent, and its reception has been sanctioned and approved in several recent decisions of the Court." The general principle upon which this class of evidence is admitted is laid down in 4 Wigmore on Evidence, 2 ed. sec. 1917, and approved among others in the following cases: *Taylor v. Security Co.,* 145 N. C., 383; *Wada v. Telephone Co.,* 147 N. C., 219; *Davenport v. R. R.,* 148 N. C., 287, 294; *Wilkinson v. Dunbar,* 149 N. C., 20; *Lumber Co. v. R. R.,* 151 N. C., 217; *R. R. v. Mfg. Co.,* 169 N. C., 156; *Lambeth v. Thomasville,* 179 N. C., 452; *Hill v. R. R.,* 186 N. C., 476.

The appellant admits the general principle but contends that under the peculiar circumstances of the case the witness was not qualified to express an opinion as to the decreased value of the property after the ditch had been closed. It will be noted that the question objected to was addressed to "the difference in the fair market value of the property of Mr. Garrison just before and just after the taking of the right of way for the sewer line and the building of the sewer line." Also that the estimate of the witness was based upon his personal observation of the land as he saw it when the ditch was open. As tending to show his estimate of value made upon observation the evidence was not incompetent merely because the work had not then been completed. The dimensions of the ditch had previously been described by Garrison; and as the witness was afterwards permitted without objection to give his estimate of damages resulting from the completed work we see no satis-

factory reason for excluding the estimate made upon his observation of the open ditch. In any event it was a circumstance for the consideration of the jury.

The second exception was taken to the exclusion of the testimony of M. M. Boyles, a witness for the city. He was an engineer of the water and sewer department and supervised the construction of the sewer line through Garrison's lot. If admitted, his testimony would have been as follows: "When I went to see Mr. Garrison, I told him that we wanted to run a sewer across his property. I told him that we wanted to run the sewer line where it was finally located, and went into some details about it. The plan and profiles of that plan had already been prepared. He did not make me a proposition to grant the easement for so much money but for certain work to be done; that is certain work on the open ditch across his lot." "Q. What was the figure you named as being sufficient to cover the ditch, and which he said would be satisfactory to him in consideration of his giving the city the right to build the line? A. According to the figures I told him it was $350.00. Q. What did he tell you that the line could be built for? A. He told me, basing it on the concrete that he had put in the sides and bottom, that it ought not to cost over $100.00 or $125.00."

The city contends that Garrison's statement was equivalent to an offer to sell for a named price and involved his estimate as to the value of the easement; the respondents contend that the offer was in the nature of a compromise and therefore inadmissible.

An unaccepted offer of compromise made pending the treaty cannot be proved; but here the city insists that no treaty was pending. It is true that no proceeding had been instituted for the appropriation of the property; but this does not mean that the negotiations of the parties were not sanctioned by law. A former charter of the city was repealed and another act of incorporation was passed by the Legislature in 1923. Private Laws, ch. 37. Section 72 provides that if land or a right of way shall be required for any of the purposes authorized by the charter and the owner and the city council cannot agree upon the compensation the property may be condemned; and C. S., 2792(a) (vol. 3), provides that the powers therein granted cities to improve their streets, drainage, and sewer conditions shall be supplementary to the powers granted in their charters, and in case this section shall be in conflict with the charter, the city may in its discretion proceed in accordance with the charter or with the statute law. In section 2792 it is said that if the parties cannot agree for the purchase of the land condemnation may be made under article 2 in the chapter on Eminent Domain.

All these statutes, the charter and the general law, contemplate negotiations before the institution of any proceeding for condemnation; and

for this reason we should hesitate to say that the "proposal of a peace offering" intended to bring about a preliminary agreement as to the compensation was not made pending the treaty. *Poteat v. Badget,* 20 N. C., 349; *Sutton v. Robeson,* 31 N. C., 381; *Daniel v. Wilkerson,* 35 N. C., 329; *Hughes v. Boone,* 102 N. C., 137; *Montgomery v. Lewis,* 187 N. C., 577.

But we think the decision of this point is at present unnecessary. If it be conceded that the excluded testimony would have disclosed an offer to grant the easement, it would also have shown that the proposed consideration was "not so much money," but "certain work to be done." If it be granted further that it would have disclosed Garrison's estimate of the cost, is not his estimate practically the same as the estimate accredited to him by Boyles? They were debating the cost of putting a concrete top on a ditch, forty or fifty feet in length, extending diagonally across the lot. Boyles would have said Garrison had fixed the cost at not more than $100 or $125. Garrison testified that he had built the two concrete sides and the concrete bottom at a cost of about $300,— each at a cost of about $100. True, this would not necessarily have made the cost of the top of $100, but Garrison said also, "I don't know that the top would cost any more than the bottom or the sides." Garrison's estimate was substantially what Boyles offered to prove; and as there was sufficient evidence to enable the jury to determine the cost of building a top for the ditch and as this cost was the consideration named by Garrison for the easement, we see no prejudicial error in the exclusion of the testimony.

No error.