### STATE v. CLORAS CADE.

(Filed 2 November, 1966.)

**1. Indictment and Warrant § 4—**

An indictment will not be quashed on the ground that some of the testimony of the qualified witness heard by the grand jury may have been hearsay and incompetent.

**2. Criminal Law § 99—**

On motion for compulsory nonsuit, the State's evidence, together with so much of defendant's evidence as is favorable to the State, will be taken as true and considered in the light most favorable to the State, giving it the benefit of every reasonable inference to be drawn therefrom.

**3. Criminal Law § 71—**

Where the evidence upon the *voir dire* supports the court's findings that defendant's statements were made after he had been fully advised of his constitutional rights and that the statements were freely and voluntarily made without inducement by threat or promise, the court's findings are conclusive on appeal, and the admission in evidence of testimony of defendant's statements will not be disturbed.

**4. Homicide § 20— Evidence in this homicide prosecution held sufficient to be submitted to the jury.**

The State's evidence tended to show that defendant and decedent had an altercation in regard to the woman with which defendant was living as man and wife, that on the occasion in question defendant found them together at the door of the home of a third person, that as the woman and decedent were standing on the front porch, defendant jumped across the fence of the yard, threatened decedent, who ran, that defendant ran after him and later returned alone to the woman, that the body of decedent was found beside the house, and that death resulted from a knife wound in the chest, together with defendant's testimony that he and the decedent were fighting beside the house and that he cut decedent, *held* sufficient to be submitted to the jury in a prosecution for homicide.

**5. Criminal Law § 154—**

An assignment of error which does not disclose within itself the question sought to be presented is ineffectual.

**6. Criminal Law § 121—**

Where the indictment is sufficient and no defect appears on the face of the record proper, defendant's motion in arrest of judgment is properly overruled.

APPEAL by defendant from *Lupton, J.*, 25 April 1966 Mixed Session of DAVIDSON.

Criminal prosecution upon an indictment, drawn under the provisions of G.S. 15-144, charging defendant on 11 December 1965 with murder in the first degree of Charlie Odell Smith.

Defendant, an indigent, was represented in the trial court and in this Court by his court-appointed counsel Ned A. Beeker.

Plea: Not guilty. Verdict: Guilty of murder in the second degree.

From a judgment of imprisonment for not less than 20 nor more than 25 years, defendant appeals.

*Attorney General T. W. Bruton and Assistant Attorney General Millard R. Rich, Jr., for the State.*
*Ned A. Beeker for defendant appellant.*

PER CURIAM. Defendant assigns as error the denial of his motion to quash the indictment, made before pleading thereto. His contention is that the only witness who appeared before and was examined by the grand jury was Bob Head, a deputy sheriff, and that all Bob Head knew about the case was hearsay or statements made to him by defendant, which statements were inadmissible because they were obtained in violation of his constitutional rights. This assignment of error is without merit. The statements made by defendant to Bob Head were free and voluntary and not obtained in vio-

lation of his constitutional rights, as will be hereafter set forth. Bob Head is a qualified witness, and there is no contention to the contrary. This assignment of error is overruled upon authority of *S. v. Goldberg,* 261 N.C. 181, 134 S.E. 2d 334.

The State and defendant presented evidence. Defendant assigns as error the denial of his motion for judgment of compulsory nonsuit made at the close of all the evidence. The State's evidence, considered in the light most favorable to it, and giving to it the benefit of every reasonable inference to be drawn therefrom, and the defendant's evidence favorable to the State *(S. v. Smith,* 237 N.C. 1, 74 S.E. 2d 291), shows the following facts: Defendant and Marie Glover, not being married to each other, had lived together for several years as man and wife. About 10 p.m. on 11 December 1965 Marie Glover and the deceased Charlie Odell Smith were visiting in the home of David Smith and his wife Annie Bell Smith. About 11 p.m. Charlie Odell Smith and Marie Glover went out the front door of the Smith home, and as they were standing on the front porch defendant jumped across the fence around the house and came running through the yard and up on the front porch. He said to Marie Glover, "Oh, yes, G-- D--- you, I told you I would catch him." He grabbed Marie Glover. Charlie Odell Smith ran around the house, and defendant pursued him. Shortly thereafter, defendant came back to the front of the house, and he and Marie Glover left. About 6 a.m. the following morning the dead body of Charlie Odell Smith was found lying on the woodpile in the back yard of the Smith home. The body of Smith was carried to the Lexington Memorial Hospital where an autopsy was performed. Dr. W. G. Smith, Sr., a practicing physician for 35 years in Davidson County and acting coroner of the County, saw Smith's dead body, and in his opinion the cause of Smith's death was an internal hemorrhage resulting from a stab wound in the right ventricle of the heart in the region of the 10th rib. In his opinion Smith could have lived only a couple of minutes — two or three — after he received the stab wound.

Later that night defendant left North Carolina and went to his brother's home in South Carolina. As a result of a phone call made by his brother to Lexington, the following night he and his brother came back to Lexington, went to the sheriff's office about 11 p.m., and defendant was placed in jail. When defendant was placed in jail he was in a drunken condition. About 7:20 a.m. the following morning Deputy Sheriff Bob Head had a conversation with the defendant in jail. The defendant objected to the admission in evidence of the statements made by him to Deputy Sheriff Head. The trial judge, in the absence of the jury, conducted a long preliminary inquiry as to the admissibility in evidence of these statements. The

court heard the testimony of Deputy Sheriff Head and the testimony of the defendant. The evidence was conflicting. After hearing this testimony, the trial judge found as facts that before the defendant made any statement to Deputy Sheriff Head that Deputy Sheriff Head stated to him that he did not have to make any statement, that any statement he made could be used for or against him in court, that he was entitled to have a lawyer and could call a lawyer on the phone if he would like to have one, that no threats were made against him and he offered him no reward or offer of reward if he made a statement, that defendant stated he did not want a lawyer and wanted to tell the truth about the matter, and that defendant's statements were freely and voluntarily made and were admissible in evidence. The judge's findings of fact are amply supported by competent evidence, and his findings of fact support his conclusion and ruling that defendant's statements were admissible in evidence, and, consequently, his ruling will not be disturbed on appeal. *S. v. Bruce,* 268 N.C. 174, 150 S.E. 2d 216; *S. v. Outing,* 255 N.C. 468, 121 S.E. 2d 847, *cert. den.* 369 U.S. 807, 7 L. Ed. 2d 555; *S. v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572, 28 A.L.R. 2d 1104. *Miranda v. State of Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, decided 13 June 1966, is not retroactive. Thereafter the jury was recalled into the courtroom and Head's testimony of what defendant said to him is in substance as follows: He got off from work at approximately 10 p.m., walked to his home, and found that Marie Glover was not there. He went out looking for her. Later that night he saw Marie Glover and Charlie Odell Smith coming out of the David Smith home. He told them, "G-- D--- it, I said I was going to catch you all, and I have." He jumped over the wood fence in David Smith's front yard and Charlie Odell Smith jumped off the front porch. They started running around the house. They were fighting beside the house, and they stopped at the woodpile. Charlie Odell Smith was lying on the ground and he cut him, but he does not know how many times. He then went back to the front of the house and he and Marie Glover went to their home. Thereafter he caught a bus and went to his brother's home in South Carolina. He told his brother in South Carolina that he and Charlie Odell Smith had got into a fight and that he had hurt Charlie Odell Smith "bad." He asked his brother to call Lexington and find out about it. His brother called Lexington and told him that he might as well go back to Lexington and give up because Charlie Odell Smith was dead. About four weeks previously he told Charlie Odell Smith at his home to leave and that if he ever caught him there again he would have to kill him, or he, Smith, would have to kill him. He further said that he opened his knife when he jumped the fence and started up on the porch.

Defendant testified in his own behalf in substance as follows: About three or four weeks prior to 11 December 1965 he came home from work and Charlie Odell Smith was at his house. He told Charlie Odell Smith that he did not want to get in trouble with him but he knew that he and Marie "were messing around together," and that he would rather for him to come back no more. Smith went out of his house and told him he wanted to settle it and get it over with. He told Smith he did not want to bother him, that he and Smith started exchanging words, and Marie got in between them. On this occasion Smith pulled a knife on him. On the night of 11 December 1965 he saw Smith and Marie Glover standing on the front porch of the David Smith home, that Smith jumped off the porch, and he and Smith got into a fight and he cut Smith while they were fighting. The State's evidence, and the defendant's evidence favorable to the State, was amply sufficient to carry the case to the jury on the charge of murder in the second degree. *S. v. Mangum*, 245 N.C. 323, 96 S.E. 2d 39. The court properly overruled the motion for judgment of compulsory nonsuit.

Defendant assigns as error the admission of hearsay evidence against him and the exclusion of relevant evidence. These two assignments of error do not show specifically what questions are intended to be presented for consideration without the necessity of going beyond the assignments of error, are ineffectual, and are overruled. *Lewis v. Parker*, 268 N.C. 436, 150 S.E. 2d 729, and cases cited.

Defendant assigns as error the denial of his motion in arrest of judgment made after verdict and to prevent entry of judgment. The indictment is drawn in the language set forth in G.S. 15-144 and is sufficient, and no defect appears on the face of the record proper. This assignment of error is without merit and is overruled. 1 Strong's N. C. Index, Criminal Law, § 121.

Defendant's other assignments of error are formal and are overruled.

In the trial below we find

No error.