STATE v. LINDA E. COOK, JOYCE A. FURR, FRANCES ANN OWENS.

(Filed 27 March 1968.)

**1. Public Officers § 5;   Courts § 17—**

A clerk of a county recorder's court vacates his office *eo instanti* he accepts the office of justice of the peace, since both are public offices under the State within the purview of Art. XIV, § 7, of the Constitution of North Carolina, and he is thereafter authorized to issue search warrants for barbiturates as a justice of the peace. G.S. 15-25.1.

**2. Criminal Law § 79—**

Evidence obtained by search under a valid warrant is competent.

**3. Narcotics § 3;   Criminal Law § 64—**

A lay witness may give an opinion as to whether or not defendant was under the influence of barbiturates on a given occasion when the witness observed him, and such evidence is relevant to the issue of defendant's alleged unlawful possession of barbiturates.

**4. Criminal Law §§ 114, 118—**

While the trial court is not required to state the contentions of the litigants even upon request, when the court does undertake to state the contentions of one party it must also fairly present the contentions of the other.

**5. Criminal Law § 104—**

All the evidence admitted which is favorable to the State, whether com-

petent or incompetent, must be considered by the court upon motion for nonsuit.

**6. Criminal Law § 106—**

The test of the sufficiency of circumstantial evidence to withstand nonsuit is whether a reasonable inference of defendant's guilt may be drawn from the evidence; if so, it is for the jury to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is guilty.

**7. Narcotics § 4—**

Evidence that barbiturate capsules were found in an apartment occupied by three defendants, that in the opinion of an arresting officer the defendants were under the influence of drugs, and that while in jail two of the defendants surrendered a quantity of barbiturate capsules, *is held* sufficient to be submitted to the jury on the issue of the three defendants' guilt of unlawful possession of barbiturates.

APPEAL by defendants from *Beal, S.J.,* 4 September 1967, Conflict Schedule "D" Criminal Session, MECKLENBURG Superior Court.

Criminal prosecution on warrants charging that each defendant on 12 April 1967 "with force and arms, at and in the County aforesaid and within the City Limits, did willfully, maliciously and unlawfully and feloniously DID POSSESS AND HAVE IN HER POSSESSION A QUANTITY OF BARBITUATE [*sic*] DRUGS WITHOUT FIRST HAVING OBTAINED A PRESCRIPTION IN GOOD FAITH FROM A LICENSED PRACTITIONER IN VIOLATION OF G. S. OF NORTH CAROLINA #90-113.2(3) of N. C., against the Statutes in such case made and provided, against the peace and dignity of the State, and in violation of the City Ordinance."

Upon trial *de novo* in superior court on appeal by defendants from City Recorder's Court of Charlotte, the jury returned a verdict of guilty. From judgment imposing a prison sentence, each defendant appealed.

The State offered evidence tending to show that on 12 April 1967, pursuant to a search warrant, police officers went to a house at 1009 E. 18th Street in Charlotte to search the premises for barbiturate and stimulant drugs. The front door was open as one officer approached, but a female slammed and locked it. The door was forced open by the officer who found Linda Cook in the middle room of the three-room house, Joyce Furr in the bathroom, and Frances Owens elsewhere in the house (apparently in the living room). Various other people were also there.

Linda Cook's eyes were sleepy, glassy and partially dilated. She had no odor of alcohol about her. A large number of Nembutal capsules, a barbiturate, were found scattered on the floor and in a

plastic bag in the middle room. Linda Cook said she stayed there.

Joyce Furr was unsteady on her feet, had glassy, dilated eyes, no odor of alcohol about her. She seemed to be in a stupor, mumbling unintelligibly. Several Nembutal capsules were found under the lavatory in the bathroom and one under the tub.

Frances Owens was staggering, had sleepy, glassy, dilated eyes and no odor of alcohol about her.

These three females and a male were arrested and taken to jail at 3:15 p.m. No pills or capsules were taken off the person of any of them. The females were not searched at the jail because no female attendant was on duty at that time.

The following morning Mrs. Betty L. Brown was deputized to search Linda Cook and Frances Ann Owens. She found nothing. The jail cells were searched and nothing found. She left and in less than five minutes returned to the cells, put out her hand, and said "give me the pills." Linda Cook handed her twenty and Frances Ann Owens handed her thirteen barbiturate pills or capsules.

*T. O. Stennett, Attorney for defendant appellants.*

*T. W. Bruton, Attorney General, and James F. Bullock, Deputy Attorney General, for the State.*

Huskins, J. Defendants were convicted of violating G.S. 90-113.2(3) which makes it unlawful "for any person to possess a barbiturate or stimulant drug unless such person obtained such barbiturate or stimulant drug in good faith on the prescription of a practitioner . . ." licensed to prescribe or dispense such drugs. Any person violating this statute, or any person who conspires, aids, abets or procures another to violate it, is, for the first offense, guilty of a misdemeanor. G.S. 90-113.7.

Defendants assign as error that: (1) the search warrant was not issued by one legally authorized to do so and therefore void; (2) the evidence obtained by use of the void search warrant was inadmissible; (3) lay evidence was admitted to prove defendants were under the influence of drugs; (4) the trial judge refused to state the contentions of the defendants in the charge; and (5) the motion for nonsuit at the close of all the evidence should have been allowed. The assignments will be discussed in the order named.

1. R. G. Hinson took the oath of office as a justice of the peace on 19 November 1965 and resigned from that office on 20 August 1967. He had previously taken the oath of office as clerk of the Mecklenburg County Recorder's Court on 1 December 1964 and continued to serve in that capacity after taking the oath as a justice

of the peace, and was so serving on the date of the trial of this case. He had also been wearing the uniform of a policeman for years and acting as court bailiff, but he was paid through the recorder's court budget and in reality was not a police officer. The search warrant in this case was issued on 12 April 1967 and signed "R. G. Hinson, Justice of the Peace." Defendants challenge his authority to issue it.

G.S. 15-25.1 authorizes a justice of the peace, or any judge, clerk or assistant clerk of any court of record to issue search warrants authorizing an officer to search a person or place for barbiturate or stimulant drugs.

The County Recorder's Court of Mecklenburg County, established under Chapter 7, Article 25 of the General Statutes of North Carolina, is a court of record. G.S. 7-218. Hence, whether R. G. Hinson was a justice of the peace or clerk of county recorder's court on 12 April 1967, he could issue warrants to search persons or places for barbiturates. He had such authority in either capacity. G.S. 15-25.1. See also 1949 N. C. Session Laws, Chapter 955. Of course he could not hold both offices at the same time. Constitution of North Carolina, Article XIV, Sec. 7. The record discloses that while holding the office of clerk of the county recorder's court he accepted the office of justice of the peace without surrendering the first office. In doing so, "he automatically and instantly vacates the first office, and he does not thereafter act as either a *de jure* or a *de facto* officer in performing functions of the first office because he has neither right nor color of right to it." *Edwards v. Bd. of Education,* 235 N.C. 345, 351, 70 S.E. 2d 170, 175, and cases cited; accord: *Atkins v. Fortner,* 236 N.C. 264, 72 S.E. 2d 594. "It is doubtless the general rule that where a man accepts an office under the state, he vacates another held under the same sovereignty . . ." *Foltz v. Kerlin,* 105 Ind. 221, 4 N.E. 439.

We hold, therefore, that Hinson was a justice of the peace at the time of the issuance of the search warrant on 12 April 1967 and was legally empowered to issue it. Hence, challenge to its validity is overruled.

2. Evidence obtained by search under a valid warrant is competent. *State v. Smith,* 251 N.C. 328, 111 S.E. 2d 188. The second assignment of error is overruled.

3. Defendants contend that a lay witness is incompetent to give opinion evidence to the effect that defendants were under the influence of drugs. In *State v. Brodie,* 190 N.C. 554, 130 S.E. 205, the Court said:

"It is a familiar principle that one who is called to testify

is usually restricted to facts within his knowledge; but if by reason of opportunities for observation he is in a position to judge of the facts more accurately than those who have not had such opportunities, his testimony will not be excluded on the ground that it is a mere expression of opinion. McKelvey on Evidence, 172, 231; *Greensboro v. Garrison,* [190 N.C. 577, 130 S.E. 203]; *Hill v. R. R.,* 186 N.C. 475 [119 S.E. 884]; *Shepherd v. Sellers,* 182 N.C. 701, [109 S.E. 847]; *Marshall v. Telephone Co.,* 181 N.C. 292, [106 S.E. 818]."

From *Beal v. Robeson,* 30 N.C. 276 (1848) to *State v. Flinchem,* 247 N.C. 118, 100 S.E. 2d 206 (1957), and since, a lay witness in this State has been held competent to testify whether or not in his opinion a person was under the influence of an intoxicant on a given occasion when the witness observed him.

Some cases hold that the rule giving a witness the right to state his opinion as to the intoxicated condition of a person applies also to opinion evidence as to whether a person is under the influence of some narcotic or other drug. *Commonwealth v. Johnson,* 198 Pa. Super. 51, 182 Atl. 2d 541; *Miller v. Hamilton Shoe Co.,* 89 S.C. 530, 72 S.E. 397; 31 Am. Jur. 2d, Expert and Opinion Evidence § 102. There is other authority that special experience is required before a witness is qualified to give an opinion as to whether a person is under the influence of drugs. *People v. Moore,* 70 Cal. App. 2d 158, 160 P. 2d 857; 31 Am. Jur. 2d, *supra.*

In this case the officer observed the condition of defendants. They were "sleepy . . . had glassy dilated eyes . . . in a stupor . . . mumbling . . . staggering . . . had no odor of alcohol about them." Nembutal capsules were found on the floor and elsewhere in the room. Laboratory tests showed they were barbiturates. Two defendants later surrendered thirty-three barbiturate capsules. Seeing defendants in their drugged condition and observing their manner of speech and movement, the witness was better qualified than the jury to draw inferences and conclusions from what he saw and heard. Their condition was a surrounding circumstance relevant to the issue of the trial, that is, the alleged unlawful possession of barbiturate drugs. Hence, under the facts of this case it was not prejudicial error to permit the officer to describe their condition to the jury and express an opinion based thereon that defendants were under the influence of drugs. This assignment is overruled.

4. Defendants assign as error the refusal of the trial court, upon request, to charge the jury with respect to the contentions of defendants. A trial judge is not required to state the contentions of

the litigants. But when he undertakes to give the contentions of one party he must fairly charge as to those of the other. Failure to do so is error. *Trust Co. v. Ins. Co.,* 204 N.C. 282, 167 S.E. 854; *Messick v. Hickory,* 211 N.C. 531, 191 S.E. 43; *State v. Colson,* 222 N.C. 28, 21 S.E. 2d 808; *Brannon v. Ellis,* 240 N.C. 81, 81 S.E. 2d 196; *State v. Kluckhohn,* 243 N.C. 306, 90 S.E. 2d 768. Here, however, the judge did not undertake to give the contentions of either the State or the defendants. True, one paragraph of the charge begins, "Now, the State says and contends that the evidence tends to show," but this is followed only by a general summary of the testimony. Hence, although the language used is not the wisest choice of words, no error is made to appear in this respect. *State v. Colson, supra* (222 N.C. 28, 21 S.E. 2d 808).

5. A motion to nonsuit requires consideration of the evidence in its light most favorable to the State, and the State must be given every reasonable intendment and every reasonable inference to be drawn therefrom. *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679; *State v. Overman,* 269 N.C. 453, 153 S.E. 2d 44; *State v. Mabry,* 269 N.C. 293, 152 S.E. 2d 112; *State v. Cade,* 268 N.C. 438, 150 S.E. 2d 756.

As to Linda Cook and Frances Ann Owens, there is abundant evidence to go to the jury. Each voluntarily surrendered possession of a quantity of barbiturate drugs in her jail cell on the morning of 13 April 1967. The jury could, and apparently did, find that each of them possessed these barbiturates when arrested and carried them to the jail. This conclusion is fortified by the evidence obtained in the search.

Joyce Furr was not named in the search warrant. No barbiturates were ever found on her person. She was present, however, at 1009 E. 18th Street when the premises were searched. She was in the bathroom where several barbiturate capsules were found under the lavatory and one under the tub. Barbiturates were found elsewhere in the house. She was unsteady on her feet, had glassy, dilated eyes, mumbling unintelligibly, and seemed to be in a stupor. There was no odor of alcohol about her. She was apparently under the influence of drugs. Are these circumstances sufficient to be submitted to the jury on the charge of unlawful possession of barbiturates?

"All of the evidence actually admitted, whether competent or incompetent . . . which is favorable to the State, must be taken into account" and considered by the Court in ruling upon the nonsuit motion. *State v. Cutler, supra* (271 N.C. 379, 156 S.E. 2d 679), and cases cited. If there is substantial evidence — whether direct, circum-

stantial, or both — to support a finding that (1) the offense charged has been committed and (2) the defendant committed it, it is a case for the jury. *State v. Norggins*, 215 N.C. 220, 1 S.E. 2d 533.

"When the motion for nonsuit calls into question the sufficiency of circumstantial evidence, the question for the Court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances. If so, it is for the jury to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that defendant is actually guilty." *State v. Rowland*, 263 N.C. 353, 139 S.E. 2d 661.

In light of these legal principles, we think a reasonable inference of guilt may be drawn from the circumstances and the evidence against Joyce Furr sufficient to require its submission to the jury. Her assignment of error for failure to nonsuit is without merit.

Defendants have had a fair trial according to law. Having failed to show prejudicial error, the verdict and judgment in each case will not be disturbed.

No error.