STATE OF NORTH CAROLINA v. WILLIAM ARCHIE LLOYD

No. 7618SC946

(Filed 1 June 1977)

1. Automobiles § 126; Criminal Law § 34.4— drunken driving — reason for stopping defendant — other violations

    In this prosecution for driving under the influence of intoxicants, a highway patrolman's testimony that defendant drove at a high rate of speed across the center line in the face of oncoming traffic was competent to show the patrolman's justification for pursuing and stopping defendant, although such testimony tended to show other violations for which defendant was not charged.

2. Automobiles § 126.1— drunken driving — opinion testimony as to intoxication

    In a prosecution for driving under the influence of intoxicants, testimony by the arresting officer and the breathalyzer operator that in their opinion defendant was under the influence of intoxicants did not invade the province of the jury and was properly admitted.

3. Automobiles § 126.3— breathalyzer test — when delay required

    Police officers are not required by G.S. 20-16.2(a) to delay administering a breathalyzer test for a period of up to 30 minutes after the person to be tested has been advised of his rights unless such person exercises his right to call a lawyer or to have a witness present at the testing.

State v. Lloyd

APPEAL by defendant from *Seay, Judge.* Judgment entered 9 June 1976 in Superior Court, GUILFORD County. Heard in the Court of Appeals 3 May 1977.

Defendant was found guilty in district court of driving under the influence of intoxicants. He appealed to superior court where he was tried *de novo.*

The State presented in evidence the testimony of the arresting officer, North Carolina State Highway Patrolman W. R. Atkins. Atkins' testimony tended to show that at approximately 11:10 p.m. on 30 March 1975, he was driving north on Penny Road in High Point. The posted speed was 35 miles per hour. The defendant's auto was approaching his in the southbound lane at a high rate of speed. Defendant's vehicle crossed the center line in the road forcing the patrolman off the paved part of the road and onto the shoulder. The patrolman immediately began turning his vehicle to give pursuit, at which time he observed defendant's vehicle again cross the center line.

Atkins subsequently caught up with the defendant, signalling him to pull off the road and stop. When Atkins approached the defendant, he detected a strong odor of alcohol. He subjected the defendant to two balance tests and observed that defendant was hesitant in his motions and unsteady on his feet. At this point Atkins placed defendant under arrest for driving under the influence of intoxicants, read him his rights, and took him to the police station for a breathalyzer test.

They arrived at the police station between 11:30 p.m. and 11:35 p.m. Atkins again reminded defendant of his rights, requested that he submit to the breathalyzer test, and proceeded to obtain information from him for the alcohol information form.

The breathalyzer operator informed the defendant of his rights with respect to the breathalyzer, tested the machine, and administered the test at 11:55 p.m. The results showed an alcohol level in the blood of eleven-hundredths of one per cent.

*Attorney General Edmisten, by Associate Attorney Nonnie F. Midgette, for the State.*

*Thomas F. Kastner, Assistant Public Defender, for the defendant.*

BROCK, Chief Judge.

[1]  In defendant's first assignment of error he objects to the patrolman's testimony in which the patrolman explained the purpose for the center line on the highway. Defendant argues that the testimony amounts to a conclusion of law by a non-expert as to the effect and reason for the center line. It is argued the error is prejudicial in that it places before the jury evidence of guilt of an offense for which defendant had not been charged. We disagree.

At the point in the patrolman's testimony where this evidence occurred, he was testifying as to why he, as a trained law enforcement officer, decided to stop defendant. The first reason given was that the defendant was driving at a rate of speed considerably in excess of the posted speed limit. The patrolman's testimony as to defendant's speed is competent and not challenged by the defendant on appeal. The second reason was that while travelling at a high rate of speed, defendant drove across the center line in the face of oncoming traffic, forcing the oncoming vehicle out of its lane and off the road. Defendant's action indicates the operation of a motor vehicle in such a manner as to have actually placed another member of the motoring public in peril. This evidence was competent to show that the patrolman, trained in the enforcement of the traffic laws of this State, had reason to stop the defendant.

The fact that such evidence is also evidence of violations for which defendant was charged is of no moment. Evidence which tends to prove other offenses is competent where such evidence exhibits a chain of circumstances with respect to the offense in issue, and is so connected with the offense charged as to throw light upon one or more of the questions in issue. *State v. Atkinson*, 275 N.C. 288, 167 S.E. 2d 241 (1969). The patrolman's testimony concerning defendant's speeding and crossing the center line was competent to show the patrolman's justification in pursuing and stopping the defendant.

[2]  In his second assignment of error brought forward for argument, defendant contends that the trial court erred in allowing the patrolman and breathalyzer operator to testify as to their opinion concerning defendant's state of intoxication. The prosecution asked each officer if he had an opinion satisfactory to himself as to whether the defendant was under the influence of intoxicating beverages. Each answered that in

State v. Lloyd

his opinion the defendant had consumed sufficient intoxicants so as to appreciably impair his mental and physical abilities. After giving the opinion, each officer stated the observations upon which the opinion was based, including the manner of vehicle operation, odor of alcohol, unsteadiness, and slurred speech.

Defendant argues that the officers, in stating their opinions, invaded the province of the jury by prejudicially offering conclusions on the very issue to be decided by the jury. He further contends that the jury was capable of drawing its own conclusion from the evidence to be gleaned from the officers' observations and relation of facts. This argument is without merit. It is now "a familiar rule of evidence in this jurisdiction that a lay witness who has personally observed a person may give his opinion as to whether that person was under the influence of intoxicants." *State v. Lindley,* 286 N.C. 255, 258, 210 S.E. 2d 207, 209 (1974) ; *see, e.g., State v. Cook,* 273 N.C. 377, 160 S.E. 2d 49 (1968) ; *State v. Flinchem,* 247 N.C. 118, 100 S.E. 2d 206 (1957) ; *State v. Warren,* 236 N.C. 358, 72 S.E. 2d 763 (1952) ; *State v. Harris,* 213 N.C. 648, 197 S.E. 142 (1938) ; *State v. Buchanan,* 22 N.C. App. 167, 205 S.E. 2d 782 (1974) ; and *State v. Dark,* 22 N.C. App. 566, 207 S.E. 2d 290 (1974).

[3]  In his final assignment of error brought forward for argument, defendant contends the breathalyzer test results should have been suppressed. He cites *State v. Shadding,* 17 N.C. App. 279, 194 S.E. 2d 55 (1973), for the proposition that where a person is advised of his rights under G.S. 20-16.2(a) and does not waive them, the results of the breathalyzer tests are admissible only if the testing was delayed (not to exceed thirty minutes) to give the defendant an opportunity to exercise such rights.

The trial judge conducted a *voir dire* to determine the admissibility of the breathalyzer test results. In declaring the results admissible, he made findings of fact that the defendant was brought to the police station and advised of his rights under G.S. 20-16.2(a) at 11:30 p.m.; that he understood his rights and had no questions; and that the test was administered at 11:55 p.m. Defendant contends that under the holding in *Shadding, supra,* since no waiver was made by defendant, the police had to wait thirty minutes before administering the

test. Because they waited only twenty-five minutes, the police violated the prescribed procedure. We disagree.

General Statute 20-16.2(a) states and *Shadding* so holds that the breathalyzer test will be delayed a maximum of thirty minutes from the time defendant is notified of his rights. The statute gives the defendant the right to have a lawyer, doctor, nurse, or witness present at the testing. The purpose of the delay is to allow the defendant, who exercises his rights, a reasonable but limited amount of time to procure their presence. The effect of the statute then is to require a defendant to exercise his rights in a timely manner. Even if he does exercise his rights within thirty minutes of notification, the test can and will be administered after the lapse of thirty minutes regardless of whether the requested persons have arrived.

Beyond the delay described above, there is no statutorily prescribed delay. In the present case there was a period of twenty-five minutes after notification during which defendant made no effort to exercise his rights. At the time the test was administered, defendant made no effort to exercise his rights. The police are not required to delay testing unless the defendant exercises his rights. Thus there was no error in the testing procedures nor in the admission of the test results.

Affirmed.

Judges VAUGHN and CLARK concur.