An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-200

Filed 21 January 2026

Davidson County, No. 23CR267148-280

STATE OF NORTH CAROLINA

v.

CURTIS LEE WALL, Defendant.

Appeal by Defendant from judgment entered by Judge Jason E. Ramsey in Davidson County Superior Court. Heard in the Court of Appeals 14 October 2025.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Alex R. Williams, for the State.*

*Samulski Law, PLLC, by Richard J. Samulski, Jr., for Defendant.*

MURRY, Judge.

Curtis L. Wall (Defendant) appeals from a judgment entered upon a jury verdict finding him guilty of possession of a dangerous weapon in prison under N.C.G.S. § 14-258.2. Defendant argues (1) "that the trial court plainly erred by admitting impermissible and prejudicial lay[-]opinion testimony" and (2) that his "trial counsel provided ineffective assistance . . . by failing to object to inadmissible evidence that undermined the foundation of [his] defense." For the following reasons,

we disagree with Defendant and hold the trial court did not plainly err and that he received effective assistance of counsel.

## I. Background

On 4 March 2023, Detention Officer Daniel Watson conducted a routine search for suspected contraband of a jail cell occupied by Defendant and two other inmates. Finding no contraband, Officer Watson informed Defendant and the other inmates that they would be strip-searched, but all three refused. Officers then escorted the inmates down the hallway for a body scan. While escorting one of the other inmates, Officer Watson found "a piece of metal wrapped in cloth" lying on the ground in the hallway (the item). Officer Watson gave the item to Lieutenant Michael Dunlap to preserve the chain of evidence. Upon reviewing hallway surveillance footage, Lieutenant Dunlap saw Defendant drop the item on his way to the body scanner. Lieutenant Dunlap classified the item as contraband, bagged it as evidence, copied the surveillance video, and stored both in a secure lockbox.

On 23 March 2023, Detective Michael Hurd retrieved the evidence and disassembled the item for photographic documentation of each disassembly stage. He observed that the item was constructed from "what appeared to be some torn bed sheets which appeared to represent a handle or a cushioning grip," "covering a toothbrush handle," which was attached to "a nail at the tip secured by some metal wiring." Concluding from his examination that the item was capable of inflicting serious bodily injury or death, Detective Hurd sought criminal charges against

Defendant.

On 5 June 2023, a grand jury indicted Defendant for possession of a dangerous weapon in prison in violation of N.C.G.S. § 14-258.2. *See* N.C.G.S. § 14-258.2 (2025) (possession of a dangerous weapon in prison). Following Defendant's plea of not guilty, this matter came on for trial on 28 August 2024. The parties stipulated pretrial to Defendant's lawful custody in a "local confinement facility" center on 4 March 2023 as defined by statute. *See id.* § 14-258.2. Officer Watson, Lieutenant Dunlap, and Detective Hurd testified for the State as lay witnesses.

Testifying at trial, Officer Watson identified the item as a "homemade weapon," often called "a shank or a shiv," which "appeared to be a piece of either fence wire or possibl[y a] nail that had been sharpened down on one end and wrapped in cloth." The State showed the jury photographs of the item, which Officer Watson used to describe its cloth grip, bulky handle, and sharpened tip. He testified to his responsibility as a detention officer to secure any object that "could appear to be a potential weapon." He then explained how the item resembled "a weapon . . . sharpened in some fashion, whether . . . by filing it down against the concrete or against the wall." He also opined that the item was "designed for inflicting some kind of injury" because of its "sharp[ness] and capab[ility] of causing a cut." The trial court overruled defense counsel's objection to this testimony.

Additionally, Lieutenant Dunlap testified to his review of the surveillance footage of Defendant drop the item in the hallway. Based on similar information to

Officer Watson's own, he concluded that it had "few purposes but to cause harm." Similarly, Detective Hurd testified to his process of disassembling and photographing the item, which determined that it was capable of inflicting serious bodily injury or death. The State showed Detective Hurd's photographs to the jury. Defense counsel did not object during Lieutenant Dunlap or Detective Hurd's respective testimonies.

Defendant presented no testimony or evidence in his own defense. At the close of evidence, the trial court gave jury instructions based on the North Carolina Pattern Jury Instructions. As to the lay-opinion testimony, the trial court altered N.C.P.I. 104.95 to instruct the jury to "only consider the opinion of a witness that is rationally based on the perception of . . . the witness and helpful to a clear understanding of the witness's testimony." N.C.P.I.–104.95. The trial court also instructed the jury that, to find Defendant guilty, "the State must prove two things beyond a reasonable doubt. First, that [D]efendant had in his possession, without authorization, a weapon capable of producing serious bodily injury or death," and second, that Defendant was "in the custody of a local confinement facility." (Quoting N.C.P.I.–280.43.) After a three-minute deliberation, the jury found Defendant guilty of felony possession of a dangerous weapon in prison. The trial court sentenced Defendant to 15 to 27 months imprisonment, which Defendant timely appealed.

## II.    Jurisdiction

This Court has jurisdiction over Defendant's appeal from the trial court's final judgment under N.C.G.S. §§ 7A-27, 15A-1444. *See* N.C.G.S. § 7A-27(b) (2025) (final

judgment of a trial court); *id.* § 15A-1444(a) (pled not guilty but found guilty).

## III. Analysis

Defendant argues that (1) "the trial court plainly erred by admitting impermissible and prejudicial lay[-]opinion testimony" and (2) his "trial counsel provided ineffective assistance . . . by failing to object to inadmissible evidence that undermined the foundation of [his] defense." Defendant concedes his failure to preserve the admissibility of the challenged testimonies for appellate review.[1] *See State v. Reber*, 386 N.C. 153, 157 (2024). He argues that the trial court's admission of this lay-witness opinion testimony constitutes plain error. *See* N.C. R. App. P. 10(a)(4).

Under plain-error review, a defendant must show an error at trial so "fundamental" as to "establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *State v. Lawrence*, 365 N.C. 506, 518 (2012). Plain error occurs only when, "absent that [prejudicial] evidence, the jury probably would have returned a different verdict." *Reber*, 386 N.C. at 162. For the following reasons, we disagree with

---

[1] While defense counsel objected and obtained a ruling on Officer Watson's opinion that the weapon was "designed for inflicting some kind of injury" because it was "sharp and capable of causing a cut," he did not object to Lieutenant Dunlap or Detective Hurd's similar testimonies. Therefore, all three testimonies are unpreserved for appellate review. *See State v. Hudson*, 331 N.C. 122, 131 (1992) (Admitting evidence without objection "waives prior or subsequent objection to the admission of evidence of a similar character." (quotation omitted)).

Defendant and discern no plain error.[2]

## A. Lay-Opinion Testimony

First, Defendant argues that the trial court plainly erred by allowing Officer Watson, Lieutenant Dunlap, and Detective Hurd's testimonies to invade "the province of the jury and g[i]ve their lay opinions that an element of the charged offense was satisfied" by categorizing the item as a weapon and opining as to its capability of inflicting injury. We disagree.

The question of a witness's credibility is a matter for the jury alone. *See State v. Solomon*, 340 N.C. 212, 221 (1995). Opinion testimony from a non-expert witness is generally inadmissible "because it tends to invade th[is] province of the jury." *State v. Fulton*, 299 N.C. 491, 494 (1980). As a result, North Carolina Rule of Evidence 701 (Rule) limits lay-witness opinion testimony to "opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact at issue." N.C. R. Evid. 701 [hereinafter Rule]. Lay-opinion testimony is unhelpful—and thus inadmissible—

---

[2] The State's brief cites to two unpublished opinions, *State v. Dancy*, 289 N.C. App. 630 (2023) and *State v. Kingsberry*, 263 N.C. App. 710 (2019). *See* N.C.R. App. P. 30(e)(3) ("An unpublished decision of the North Carolina Court of Appeals is not controlling legal authority."). Our procedural rules clearly disfavor citation to unpublished opinions, but "[i]f a party believes . . . that an unpublished opinion has precedential value . . the party may cite the unpublished opinion if that party serves a copy thereof on all other parties in the case and on the court." N.C.R. App. P. 30(e)(3). Here, the State failed to note that these cases are unpublished in its brief to this Court, nor did it serve this Court with copies of these opinions as required. *See* N.C. R. App. P. 30(e)(3). In any event, the State cited other sufficient legal authority to support its argument, but we nonetheless note this violation of our appellate rules.

where the jury is "apparently as well[-]qualified as the witness to draw the inferences and conclusion[s] from the fact that [the witness] expressed in his opinion." *Fulton*, 299 N.C. at 494. But certainly testimony can be helpful—and thus admissible—where "the witness, through study and experience, has acquired such skill that he is better qualified than the jury to form an opinion as to the subject matter to which his testimony applies." *Id.* (quotation omitted). More specifically, a law-enforcement officer may testify as a lay witness about details "rationally based on [his] perception and experience" to help the jury understand "his investigative process." *State v. O'Hanlan*, 153 N.C. App. 546, 562–63 (2002); *see* Rule 704 (A witness's opinion may "embrace[ ] an ultimate issue to be decided by the trier of fact."). But no witness may testify absent evidence supporting "a finding that he has personal knowledge of the matter," which "may, but need not, consist of the" witness's testimony itself. Rule 602.

Nevertheless, our evidentiary rules do *not* prohibit a lay witness from including a "shorthand statements of facts," *State v. Dew*, 225 N.C. App. 750, 757 (2013), which is an "instantaneous conclusion of the mind as to the appearance, condition, or physical state of things, derived from observation of a variety of facts presented to the senses at one and the same time," *State v. Mills*, 221 N.C. App. 409, 414 (2012) (citation modified); *see State v. Cook*, 273 N.C. 377 (1968) (holding it was proper for an officer to describe the condition of a defendant and opine that the defendant appeared to be under the influence of drugs). This is true even "if the instantaneous conclusion is also an *element* of the charged offense." *State v. Graham*, 186 N.C. App.

182, 195 (2007) (emphasis added) (holding that witnesses' testimonies were "short statement[s] of fact and therefore not barred by Rule 701"). In other words, Rule 701 permits an officer to offer lay-opinion testimony about his "instantaneous observations," even if it directly relates to an element of the offense. *Mills*, 221 N.C. App. at 414; *see, e.g.*, *State v. Daye*, 83 N.C. App. 444, 445–46 (1986) (holding that witness's testimony that the defendant concealed clothing by hiding clothing in her purse was admissible in the defendant's trial for willfully concealing merchandise).

Here, the challenged portions of Officer Watson, Lieutenant Dunlap, and Detective Hurd's testimonies were admissible as both instantaneous conclusions and descriptions of the investigative process. Officer Watson instantaneously concluded that the item was a "homemade weapon" based on his observation at the time. After identifying the item as a "weapon," he explained his investigative process as needing to secure anything "that could be used as a potential weapon." Similarly, Lieutenant Dunlap instantaneously concluded that the item was "contraband" based on its apparent lack of any "purpose[] but to cause harm." He also described his investigative process by explaining how he reviewed security footage that showed Defendant dropping the item on the ground. Additionally, Detective Hurd instantaneously concluded that the item could "inflict[] serious bodily injury or death" based on his observation of the item at the time. He then testified to how his examination of the item informed his process: the conclusion of his examination led him to seek "criminal charges, as [the] item was capable of inflicting serious bodily

injury or death." Therefore, all three witnesses' testimonies were proper lay-witness opinions as either instantaneous conclusions or descriptions of the investigative process.

Even assuming *arguendo* the inadmissibility of the lay-opinion testimonies under Rule 701, the trial court committed no plain error considering the State's "overwhelming and uncontroverted" evidence of Defendant's guilt. *Lawrence*, 365 N.C. at 519; *see* N.C.G.S. § 15-1443(a) (defendant's burden to show prejudice). Because Defendant stipulated to his imprisonment in a local detention facility and the evidence clearly showed that Defendant possessed the object, the only element of the crime subject to serious dispute was whether that the item was "a weapon capable of inflicting serious injury or death." N.C.G.S. § 14-258.2(a).[3] At trial, the State presented the jury with the item itself and accompanying photographs. The jurors could easily draw their own conclusions about the purpose and potential danger of a nail attached with wire to a toothbrush handle. The evidence tended to show that this crudely constructed item did not have any apparent potential purpose other than to serve as a weapon. In addition, the State offered evidence of Defendant's knowledge that weapons are considered contraband in prison, that he was about to be strip-searched, and his resulting need to drop the item on the ground beforehand. Thus,

---

[3] Pertinent here, N.C.G.S. § 14-258.2(a) provides that "any person under the custody of any local confinement facility . . . who shall have in his possession without permission or authorization a weapon capable of inflicting serious bodily injuries or death, or who shall fabricate or create such a weapon from any source, shall be guilty of a Class H felony." N.C.G.S. § 14-258.2(a) (2025).

the State offered ample evidence demonstrating Defendant's possession of an item capable of inflicting harm such that any reference to the item as a "weapon" would not have supplanted the jury's independent judgment, particularly where the jury viewed the item directly and was properly instructed on its factfinding role. *See State v. Odom*, 307 N.C. 655, 660 (1983) (explaining that plain-error review is reserved for "exceptional cases" where the error deprived the defendant of a fair trial). Therefore, given the "overwhelming and uncontroverted" evidence of his guilt, Defendant can show no reasonable possibility that the jury "would have returned a different verdict" had the trial court excluded the challenged testimonies. *State v. Chavez*, 378 N.C. 265, 270 (2021) (quotation omitted). As a result, Defendant has failed to show plain error.

## B. Ineffective Assistance of Counsel

Second, Defendant argues that he received constitutionally defective assistance because his counsel failed to object to the lay-opinion testimonies categorizing the item as a weapon or opining as to its capability of inflicting injury. This Court reviews *de novo* this sort of claim. *See State v. Wilson*, 236 N.C. App. 472, 475 (2014).

To show ineffective assistance of counsel, a defendant "must first show that his counsel's performance was deficient and then that counsel's deficient performance prejudiced his defense." *State v. Allen*, 360 N.C. 297, 316 (2006). To "overcome" this Court's "strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance," a defendant "must show that the challenged action cannot be considered sound trial strategy." *State v. Lane*, 271 N.C. App. 307, 319 (2020) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). The error must be "so serious that [the defendant's] counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *State v. Braswell*, 312 N.C. 553, 562 (1985). But because the trial court did not err by admitting Lieutenant Dunlap and Detective Hurd's lay-opinion testimonies, Defendant has also failed to demonstrate ineffective assistance of counsel as there is no "reasonable probability" that, in the absence of defense counsel's alleged errors, "the trial result would have been different." *State v. Martin*, 195 N.C. App. 43, 46 (2009) (quotation omitted).

## IV.    Conclusion

For the reasons above, this Court holds that the trial court did not plainly err by admitting the lay-opinion testimonies of Officer Watson, Lieutenant Dunlap, and Detective Hurd and that Defendant received effective assistance of counsel.


NO PLAIN ERROR.

Judges STROUD and WOOD concur.

Report per Rule 30(e).