Pearson, J.
Tire jury having found the prisoner not guilty, on the first and third counts, we are to assume that the injuries inflicted upon the person of the deceased, were not sufficient, of themselves, to have caused her death, without the additional circumstances of her being exposed to the inclemency of the weather, by remaining out all night on the damp ground, in the open air.
The second count, besides the injuries inflicted upon the person of the deceased, charges, that the prisoner drove her *427 out of his dwelling house, and left her in the open air, and, that the injuries inflicted upon her person, together with the exposure, by being so left in the open air, caused her death. Upon this count, the prisoner was convicted.
The testimony in reference to the exposure is, after the prisoner had desisted from beating the deceased, she went off a little distance in the yard and sat down; the prisoner sat down also; after about five minutes, he went into the house, and laid down on the bed with his clothes on. In about half an hour afterwards, the deceased proposed to the witness (-who was her son) to go with her to the house of her father, which was distant about two miles and a half. lie assented, when she took a bed-quilt and some clothing, and her infant child, about nine months old, and they left together, about 8 o’clock at night. Another witness, a daughter of the deceased, says, she also took nine yards of spun cotton. On the way, she complained several times of being weary, and stopped to rest a few minutes ; complained of her legs ; she was a fat woman. When they got with'm some two hundred yards of her father’s house, the deceased said, she did not wcmt to go to her father’s till morning, and spread down the bed-quilt in the woods; witness covered her and the child with the clothing, and remained there until about two hours before day, witness having fallen asleep, when she insisted on his returning home; he did so, and left her and the child alone, where they remained until daylight, when she was taken to the house.
Now, admit that, from this evidence, the jury were at liberty to infer, that the prisoner drove the deceased out of his house, there is no evidence to support the further allegation, that he left her exposed in the open air; in that scene of the tragedy, he had no part; she had arrived within two hundred yards of her father’s house; there was nothing to prevent her from going on, but she chose, of her own accord, to remain out all night, exposed on the damp ground.
We can see nothing in the evidence to support the suggestion made by his Honor, in explanation of this conduct on her part; after charging, that if she voluntarily exposed her *428 self, when she could have gone into her father’s house, the prisoner was not responsible, he adds, “ but, if, in the best exercise of her judgment, under the circumstances, she deemed the course pursued the most suitable to ■protect herself amd her i/rfa/nt, although the jury might not think it the most proper, the prisoner would be responsible.” "Where is the evidence that she remained out all night, for fear that her husband would pursue her ? Taking the bed-clothes and the spun cotton, when she left home, indicated a certain degree of deliberation, and it would have been a strange idea, to be out all night by the side of the road, instead of seeking shelter, at once, under her father’s roof, had she apprehended further violence.
If, to avoid the rage of a brutal husband, a wife is compelled to expose herself, by wading through a swamp, or jumping into a river, the husband is responsible for the consequences ; but, if she exposes herself thus, without necessity, and of her own accord, we know of no principle of law, by which he is held responsible, to the extent of forfeiting his life.
Per Curiam.
There is error; let there be a venire de novo.