AGNES E. GOLDBERG v. UNITED LIFE AND ACCIDENT INSURANCE COMPANY, CONCORD, NEW HAMPSHIRE.

(Filed 26 March, 1958)

**1. Assault and Battery § 4—**
   No words, however violent or insulting, justify a blow.

**2. Homicide § 7—**
   Where one person voluntarily and unlawfully strikes another, and the person so struck falls and hits his head, resulting in a fatal concussion, the death is a homicide.

**3. Insurance § 39—**
   Plaintiff's evidence tended to show that insured was voluntarily and unlawfully struck by another, causing insured to fall and hit his head upon the floor, resulting in fatal hemorrhage. *Held:* Plaintiff's evidence discloses death from homicide within the exclusion provision of the double indemnity clause sued on, and therefore nonsuit was correctly entered in her action to recover double indemnity.

**4. Trial § 24a—**
   Where defendant's affirmative defense is established by plaintiff's own evidence, nonsuit may be entered.

APPEAL by plaintiff from *Pless, J.,* at 4 November, 1957, Term of MECKLENBURG.

Civil action to recover upon double indemnity provisions of two life insurance policies issued by the defendant to Herman P. Goldberg, who died of a fractured skull following a fall to the floor after being assaulted and struck by Dr. V. A. Black.

Each policy insured the life of Herman P. Goldberg in the amount of $10,000 and contained a stipulation for double indemnity of $10,000, in terms as follows: "The United Life and Accident Insurance Company, upon receipt of due proof of the death of the Insured while said policy and this agreement are in force, promises to pay DOUBLE INDEMNITY . . . , in the event that such death should result directly and independently of all other causes from bodily injury effected solely through external, violent, and accidental means . . . *provided such death shall not have resulted from homicide,* . . . " (Italics added.)

The face amount of each policy was paid by the insurance company to the widow, Agnes E. Goldberg, in the total amount of $20,000, but the company refused to make payment under the double indemnity provisions, and thereupon this action was instituted.

The plaintiff in her complaint alleges generally that the death of the insured "resulted directly and independently of all other means from bodily injury effected solely through external, violent, and acci-

dental means," within the meaning of the policies. And, specifically, she alleges:

"9. That on or about January 14, 1955, Herman P. Goldberg was at the Elks Club in the City of Charlotte, State of North Carolina, . . .

"10. That on said date, one Dr. V. A. Black struck the said Herman P. Goldberg in the face with his hand or fist.

"11. That the said Herman P. Goldberg, immediately thereafter and as a result thereof, fell to the floor, his head striking the said floor and causing a fracture of the skull and a sub-dural hemorrhage.

"12. That as a result of said injuries the said Herman P. Goldberg died on Jan. 14, 1955."

The defendant by answer denies that the insured met his death by accidental means within the coverage of the policies, and by way of affirmative defense alleges that the death of the insured resulted from homicide, a cause of death expressly excluded from the double indemnity insuring agreements.

The plaintiff's witness Harry McKinnon testified as follows:

"I was at the Elks Club on January 14, 1955, at the time Mr. Goldberg was injured. I was at one end of the room with my back towards the parties concerned. I entered the building just a short while before the incident, passed through the building into the back end of the receiving counter. While I was standing there I heard a conversation being carried on and all of a sudden a noise and when I turned around I saw Mr. Goldberg at an angle to the floor approximately hitting the 'floor. His head bounced off the floor. His whole body struck it, too. I had talked with Mr. Goldberg when I walked in as a matter of greeting."

On cross-examination the witness McKinnon testified:

"The incident took place in the club room, which is in the basement floor, . . . At the time I saw Mr. Herman Goldberg and Dr. V. A. Black, they were in some manner of discussion; . . . Dr. Black and Mr. Goldberg were in proximity of each other. After I had passed and gone on, I did hear some words and then heard a noise and after that I turned around. To the best of my knowledge, after I turned around I saw Mr. Goldberg fall to the floor. I heard the terminology 's.o.b.' used. It came from the vicinity of where Mr. Goldberg was. Immediately after I heard the words 's.o.b.,' I heard the noise and scuffle. When I heard the noise or scuffle, I turned around and saw Mr. Goldberg practically at the floor. His head hit the floor. I went over to the place where Mr. Goldberg and Dr. Black were immediately after it happened. I heard Dr. Black say that Goldberg called him a 's.o.b.,' and that he would hit any man that did. According to my testimony, I did

not indicate that anyone called anyone a s.o.b.; however, the terminology was used. I did not see anyone strike anyone; however, I did hear the noise. Whether he was struck or pushed or what have you, I don't know. I did hear the term 's.o.b.' used. I think Dr. Black generally did state that he (Goldberg) called him a 's.o.b.' and that he did hit him."

Dr. Albert A. Kossove, a medical expert who was present at the autopsy, testified in part:

"The autopsy revealed the cause of his (Goldberg's) death. The findings were that there was a rather large fracture of the skull in the occipital or back of the head region and that there was extensive subdural hemorrhage as well as hemorrhage in the spaces of the brain called intra-ventricular hemorrhage. My opinion as to the cause of the injury is that he received a strong blow on the head or the head striking any hard object."

At the close of the plaintiff's evidence, the defendant's motion for judgment as of nonsuit was allowed. From judgment entered in accordance with this ruling, the plaintiff appealed.

*Alvin A. London and Richard L. Kennedy for plaintiff, appellant.*
*Pierce, Wardlow, Knox & Caudle for defendant, appellee.*

JOHNSON, J. Conceding, without deciding, that the plaintiff's evidence in some aspects is sufficient to show *prima facie* that the insured met his death through accidental means within the insuring provisions of the policies, even so, the evidence discloses conclusively that the insured met his death by homicide as the result of being struck by Dr. Black. True, it may be inferred that Dr. Black was incited to action by the insulting language of the insured and that in striking the blow he had no intent to kill. Nevertheless, the rule is that no words, however violent or insulting, justify a blow. *Lewis v. Fountain,* 168 N.C. 277, 84 S.E. 278; *Palmer v. R.R.* 131 N.C. 250, 42 S.E. 604; 6 C. J. S., Assault and Battery, Sec. 91, p. 943. And death having resulted from the voluntary, unlawful act of Dr. Black, i.e.; an assault and battery, it was death by "homicide" within the meaning of the exception clauses of the policies. 40 C. J. S., Homicide, Sec. 58; 29 C. J., p. 1150. See also *S. v. Knight,* 247 N.C. 754 102 S.E. 2d 259; *S. v. Hovis,* 233 N. C. 359, 64 S. E. 2d 564; *United Life & Accident Ins. Co. v. Prostic,* 169 Md. 535, 182 A. 421. These things appearing as the only reasonable inferences deducible from the testimony received in evidence, the judgment of nonsuit entered below will be upheld on the ground that the defendant's affirmative defense of homicide was established as a matter of law by the plaintiff's evidence. Where a defendant's affirmative defense is so established, nonsuit may be entered. *Hedgecock v. Ins. Co.,* 212 N. C. 638, 194 S. E. 86; *Butler v.*

*Ins. Co.*, 213 N. C. 384, 196 S. E. 317; *Thomas-Yelverton Co. v. Ins. Co.*, 238 N. C. 278, 77 S. E. 2d 692; *Jarman v. Offutt*, 239 N. C. 468, 80 S. E. 2d 248.

In *Hedgecock v. Ins. Co.*, *supra*, at p. 641, the rule is stated this way: "When the plaintiff offers evidence sufficient to constitute a *prima facie* case in an action in which the defendant has set up an affirmative defense, and the evidence of the plaintiff establishes the truth of the affirmative defense as a matter of law, a judgment of nonsuit may be entered."

Affirmed.