STATE OF NORTH CAROLINA v. JOHN W. CUMMINGS AND WILLIE MAE RAY CUMMINGS

No. 7912SC1106

(Filed 20 May 1980)

**Homicide § 21.2— battery of intoxicated victim—aspiration of vomitus as cause of death—injuries inflicted by defendants as cause of death**

In a prosecution for manslaughter, evidence was sufficient to show that the assault by defendants was a proximate cause of the victim's death where such evidence tended to show that the victim's blood ethanol content was .35%; before the assault by defendants, the victim was walking, moving about freely, and running backwards with his hands in the air; the direct cause of his death was aspiration of vomitus; and the jury could reasonably find from the evidence that the victim's death resulted not from the injuries inflicted upon him in the unlawful battery by defendants but from being knocked to the sidewalk on his back where, because of his intoxicated condition, he was unable to expel the vomitus from his mouth and thereby "drowned," and that the victim would not have died but for defendants' unlawful assault upon him.

Judge CLARK dissenting.

APPEAL by defendants from *Braswell, Judge.* Judgments entered 12 July 1979 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 15 April 1980.

Defendants were charged with voluntary manslaughter in the death of Oscar M. Melvin. The state's evidence showed defendants were chasing Melvin, who was running backwards with his hands up in the air. John Cummings had a thick board in his hands and was hitting at Melvin with it. At the same time, Willie Mae Cummings was carrying a broken-off bottle. As Melvin ran backwards, John swung the board "midway" of his stomach. Defendants pursued Melvin into a corner at the ice box outside Horne's Grocery Store. There, Willie Mae went behind Melvin and stabbed at him. As he fell forward, John hit him with the stick and Melvin spun around, falling to the sidewalk. Two other people came up with sticks but did not hit Melvin. In a few seconds, they all ran away leaving Melvin. Melvin was lying flat on his back on the sidewalk when the officers arrived. Around his head was a small puddle of blood. He took a few gasping breaths and died.

William B. Leach, a medical doctor stipulated to be an expert specializing in pathology, performed an autopsy upon the body of Melvin. Dr. Leach found Melvin to be a middle-aged black man, 5 feet 8 inches tall and weighing 180 pounds. There were a number of wounds on his body: a cross-shaped laceration of his skull four inches above his left eyebrow, a deep cut to the bone of his left chin about 1-1/2 by 1-3/8 inches, one in the lower neck above the breastbone, a shallow cut below his left collarbone, and numerous scratches.

Internally, Melvin's lungs were congested and the air passage system, the bronchial system, was filled with material identical to that later found in his stomach. This indicated to Dr. Leach that the material had been aspirated or sucked into the lungs. In the doctor's opinion the immediate cause of death was that Melvin's airway was obstructed by the vomitus which he had sucked into the airway system of his lungs. He asphyxiated or drowned because of this obstruction.

Melvin had a blood ethanol content of .35 percent, which would cause a person to be stuporous or unconscious. Being in a lying down or prone position, with this blood alcohol content af-

fecting his "gag reflexes," would have caused him to suck vomitus into his throat. This is more common when a person is in a prone position.

When the officers arrived at the scene, they secured the area and searched it for weapons. They did not find a knife either on Melvin or in the area, but did find a broken 1 by 4 piece of lumber.

Defendants' evidence showed that Melvin was at Rick's house, right behind Horne's Grocery. Willie Mae went there also and there were other persons in the house. All were drinking wine. Willie Mae was at the piano with some wine in a jar when Melvin made sexual advances toward her. Melvin went to the bathroom and as he returned he again made sexual remarks to Willie Mae and went on out to the front porch. She then went to the porch and told Rick what had happened. About this time, Johnny Cummings came into the yard and took up the argument with Melvin. Melvin had a knife out and threatened to cut Johnny, so Johnny got a board. He and Melvin chased each other around the yard, Johnny with the board and Melvin with a knife. Meanwhile, Willie Mae had picked up a piece of broken glass. They got to Horne's Grocery and Johnny hit Melvin with the board. Willie Mae swung at him with the bottle and he went down. Willie Mae and Johnny went back to Rick's house.

Upon submission of the case to the jury, a verdict of guilty of involuntary manslaughter was returned as to each defendant. From sentences of imprisonment, defendants appeal.

*Attorney General Edmisten, by Assistant Attorney General James L. Stuart, for the State.*

*Malcolm R. Hunter, Assistant Public Defender, Twelfth Judicial District, for defendants.*

MARTIN (Harry C.), Judge.

Defendants' principal assignment of error is directed to the court's refusal to grant their motions for dismissal at the close of all the evidence. Their argument is centered on the lack of a showing that the assault by defendants was a proximate cause of Melvin's death.

As always, upon a motion to dismiss, we must view the evidence in the light most favorable to the state and allow the state every reasonable inference that may arise upon the evidence, regardless of whether it is circumstantial, direct, or both. Contradictions and discrepancies are for the jury to resolve and do not warrant nonsuit. If there is substantial evidence to support a finding that the offense has been committed and that defendant committed it, a case for the jury is made and nonsuit should be denied. *State v. McKinney*, 288 N.C. 113, 215 S.E. 2d 578 (1975); *State v. Cook*, 273 N.C. 377, 160 S.E. 2d 49 (1968). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Comr. of Insurance v. Rating Bureau*, 292 N.C. 70, 80, 231 S.E. 2d 882, 888 (1977); *Boehm v. Board of Podiatry Examiners*, 41 N.C. App. 567, 255 S.E. 2d 328, *cert. denied*, 298 N.C. 294, 259 S.E. 2d 298 (1979).

The state's evidence, considered as above stated, shows Melvin was highly intoxicated and that this affected his ability to expel vomitus from his mouth; his "gag reflexes" were inoperative. He was more likely to inhale vomitus into his airway system if in a prone position. Prior to the assault by defendants, he was in an upright position, running backwards and moving about freely, and a logical inference from the evidence is that he was not vomiting prior to being knocked down. Defendants struck Melvin about the head and body with a board and broken bottle several times and knocked him to the sidewalk, flat on his back. Defendants made no effort to aid him but left him and ran back to Rick's house. When Officer Burgess got to Melvin, he was still on his back, with his eyes glassed over, taking deep gasping breaths.

The state must produce evidence sufficient to establish beyond a reasonable doubt that the death proximately resulted from defendants' unlawful acts. *State v. Minton*, 234 N.C. 716, 68 S.E. 2d 844, 31 A.L.R. 2d 682 (1952). The act complained of does not have to be the sole proximate cause of the death, nor the last act in sequence of time. There may be more than one proximate cause of the death in question. It is enough if defendants' unlawful acts join and concur with other causes in producing the result. *Batts v. Faggart*, 260 N.C. 641, 133 S.E. 2d 504 (1963); *Richardson v. Grayson*, 252 N.C. 476, 113 S.E. 2d 922 (1960); *Harris v. Montgomery Ward & Co.*, 230 N.C. 485, 53 S.E. 2d 536 (1949).

In *State v. Knight*, 247 N.C. 754, 102 S.E. 2d 259 (1958), defendant was properly found guilty of involuntary manslaughter where deceased died from fright or shock resulting from an unlawful battery upon him, even though the injuries inflicted thereby in and of themselves would not have caused death.

An accused who wounds another with intent to kill him and leaves him lying out of doors in a helpless condition on a frigid night is guilty of homicide if his disabled victim dies as the result of exposure to the cold. This is true because the act of the accused need not be the immediate cause of the death. He is legally accountable if the direct cause [of the death] is the natural result of his criminal act.

*State v. Minton, supra* at 722, 68 S.E. 2d at 848.

Where a defendant unlawfully assaulted deceased by striking him, without any intent to kill, causing him to fall and his head to strike the hard floor resulting in his death from a fractured skull, it is a homicide. *Goldberg v. Insurance Co.*, 248 N.C. 86, 102 S.E. 2d 521 (1958).

The evidence in *State v. Hargett*, 255 N.C. 412, 121 S.E. 2d 589 (1961), is analogous to our case. There deceased, with defendant and others, was drinking, deceased being highly intoxicated, his ethanol content being 4.0 milligrams per milliliter. He was unconscious or in a helpless condition, although the acute alcoholism would not have killed him. Defendant and deceased were in front of a car, when defendant shoved him into a ditch where he fell face down in the water. Defendant drove away, leaving deceased in a ditch. There was no evidence of trauma on the body and the cause of death was drowning. The Supreme Court held the evidence was sufficient to submit the case to the jury on the charge of manslaughter.

The jury could reasonably find from the evidence that Melvin's death resulted not from the injuries themselves, inflicted upon him in the unlawful battery by defendants, but from being knocked to the sidewalk upon his back where, because of his intoxicated condition, he was unable to expel the vomitus from his mouth and thereby "drowned," and that Melvin would not have died but for defendants' unlawful assault upon him. The direct cause of Melvin's death, the aspiration of vomitus, was the natural result of defendants' assault upon him.

The defendant must accept his victim in the condition that he finds him. We hold defendants' motions for dismissal were properly overruled. Further, we hold the evidence is sufficient for a rational trier of fact to find defendants guilty beyond a reasonable doubt of involuntary manslaughter under the laws of North Carolina. *Jackson v. Virginia*, --- U.S. ---, 61 L. Ed. 2d 560, *rehearing denied*, 62 L. Ed. 2d 126 (1979).

Defendants argue in their brief that the trial court erred in its charge to the jury. These assertions have no merit and as they do not raise any new or unusual questions, they require no elaboration. The case was well tried by the veteran trial judge and "illustrates anew the unrelenting truth that 'the sin ye do by two and two ye must pay for one by one.'" *State v. Minton, supra* at 727, 68 S.E. 2d at 852.

No error.

Judge VAUGHN concurs.

Judge CLARK dissents.

Judge CLARK dissents.

I agree with the majority that the trial judge has grown old and skilled through experience and therefore qualifies as a veteran, that the case was well tried (except for applying the law to the facts), and that those who sin or err "by two and two must pay for one by one." However, I dissent from the majority opinion because I believe that, as a matter of law, the death of Oscar M. Melvin was not proximately caused by the defendants' actions. "[I]f defendant did not cause the death of decedent, within the rules of legally-recognized causation, he cannot be convicted of homicide even if he committed an assault and battery upon that person and is subject to conviction upon a charge of this lesser offense." Perkins, *Criminal Law* (2d ed. 1969) at 727.

First, as explained by Professor Perkins, "[c]onceivably a different set of proximate cause might be established for each particular crime. This has not been done, but since the degree of moral obliquity exhibited by the act, and the extent of the social menace involved, are factors to be considered, the result will not

necessarily be the same for all offenses. *In particular, the legal eye reaches further in the examination of intentional crimes than in those in which this element is wanting, such as involuntary manslaughter.*" (Emphasis supplied.) *Perkins, supra,* at 693. *See also,* La Fave and Scott, *Criminal Law* (1972) at 252 ("cause and result crimes of intention must be treated separately from those of recklessness and negligence.")

Second, while foreseeability generally has no application to the issue of proximate causation in criminal cases, the exception to this rule arises when there is an independent intervening cause or a dependent intervening cause in the form of an abnormal response of a human being. *Perkins, supra,* at 726. Consequently, "if defendant's act created merely a condition, and the actual harm resulted from an 'independent' cause, or an abnormal response by man . . . the issue of proximate cause is dependent upon whether or not such harm . . . was a foreseeable risk of the condition created by the defendant." *Id.* In this case, the medical doctor testified that the cause of death was the result of the decedent's inhaling his own vomitus, and that he had no opinion as to whether the defendant's blow caused the vomiting. Further, the malfunction of the gag reflex was due to the decedent's excessive consumption of alcohol. I do not think that the defendant could have possibly foreseen that the decedent would drown in his own vomitus when a medical doctor has testified that he had no opinion as to whether defendant's act would cause vomiting. "*In jure non remota causa sed proxima spectatur*" (in law not the remote cause but the proximate cause is regarded.)

Third, when the force which was set in motion by defendants has come to a position of apparent safety or when the victim has reached a place of apparent safety, and death results from another cause, the acts of the defendants will not be the proximate cause of the decedent's death. *See, State v. Preslar,* 48 N.C. 421 (1856); *Perkins, supra,* at 696-97. *See, also, People v. Elder,* 100 Mich. 515, 59 N.W. 237 (1894) in which it was held that one who knocks another down is not the proximate cause of death which resulted when another bystander took advantage of the helpless situation of the victim to administer a fatal kick.

Finally, "courts have tended to distinguish cases in which the intervening act was a *coincidence* from those in which it was a

*response* to the defendant's prior actions. An intervening act is a *coincidence* when the defendant's act merely put the victim at a certain place at a certain time, and because the victim was so located it was possible for him to be acted upon by the intervening cause. . . . By contrast, an intervening act may be said to be a *response* to the prior actions of the defendant when it involves a reaction to the conditions created by the defendant. [A] coincidence will break the chain of legal cause unless it was foreseeable. . . ." La Fave and Scott, *supra*, at 257-58. The medical doctor could not state that the vomiting was a response to defendant's blows. The vomiting was, rather, coincidental to the defendant's act and was therefore not the proximate cause of the decedent's death.