An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the *North Carolina Rules of Appellate Procedure*.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-1114

Filed 20 August 2025

Robeson County, No. 17 CRS 52317

STATE OF NORTH CAROLINA

v.

JORDEN KASEY SMITH, Defendant.

Appeal by Defendant from judgment entered 30 March 2023 by Judge Tiffany Peguise-Powers in Robeson County Superior Court. Heard in the Court of Appeals 11 June 2024.

> *Blass Law, PLLC, by Attorney Danielle Blass, for defendant-appellant.*
>
> *Attorney General Jeff Jackson, by Assistant Attorney General Kindelle M. McCullen, for the State.*

STADING, Judge.

This case arises from Jorden Kasey Smith ("Defendant") shooting and killing Kinston Locklear in Maxton on 15 April 2017. Defendant appeals from final judgment entered upon a jury verdict convicting him of voluntary manslaughter. Defendant asserts that the trial court failed to properly instruct the jury on self-

defense and erroneously denied his motion to dismiss for insufficient evidence. Defendant also maintains he received ineffective assistance of counsel ("IAC") because his trial attorney failed to request certain pattern jury instructions and failed to object to the aggressor and excessive force jury instructions. After careful review, we discern no error.

## I.  Background

On 4 December 2017, the Robeson County grand jury returned a single-count true bill of indictment charging Defendant with second-degree murder. Defendant's trial commenced on 27 March 2023. The evidence primarily came from two eyewitnesses, including the testimony of Christopher Lowery (Mr. Locklear's cousin), and a video recorded interview of Defendant conducted by law enforcement.[1]

Mr. Lowery's testimony tended to show that he and Mr. Locklear were "hanging out" on 15 April 2017 at Mr. Locklear's family home. Mr. Lowery recounted Mr. Locklear had recently come home after working a construction job "out of town." Later on in the night, their mutual cousin, Chad, came over to sell Mr. Locklear various work tools, including "wire snips, [a] sheetrock knife, and something else." Mr. Lowery was unable to recall the exact price that Chad and Mr. Locklear agreed to but remembered the total amount was less than twenty dollars. As Mr. Locklear went to pay for the tools, he realized he only had a twenty-dollar bill in his possession.

---

[1] Chad Locklear, also a cousin of Mr. Locklear, was present at the time of the killing but had passed away before trial.

Mr. Lowery, Chad, and Mr. Locklear went across the street to see if the neighbors had change to finalize the transaction.

Upon crossing the street, the group saw Defendant sitting alone in the front passenger seat of a four-door Toyota Camry in the neighbor's driveway. Mr. Locklear—still holding the tools—approached Defendant to ask for change. Once Mr. Locklear made it to the vehicle's passenger side window, he "squatted down, looking at the tools from the interior light of the car." Mr. Lowery testified Mr. Locklear was squatting down to observe the sheetrock knife "because it was dark," and he opened and closed the knife when doing so. Mr. Lowery also stated the door to Defendant's vehicle was closed at that time. As Mr. Locklear started to stand up, Defendant pulled out a handgun and fired three shots, two of which struck Mr. Locklear in the chest and left shoulder. The third bullet struck Chad's hat, knocking it "off his head." Defendant then opened the vehicle's door, "stepped over [Mr. Locklear]," and stated, "I want to kill you, you son of a b[****]. Trying to rob me, son of a b[****]." Defendant then re-entered the vehicle and drove away while continuing to discharge his firearm. However, Mr. Lowery noted that Mr. Locklear never told Defendant he was going to rob or cut him.

Although Defendant did not testify, a video of his interview at the police station was admitted into evidence as State's Exhibit No. 34. In this interview, Defendant testified that he shot Mr. Locklear in self-defense. Defendant noted that he met Mr. Locklear through a mutual friend, that Mr. Locklear was well-known for robbing

people, and that Mr. Locklear stabbed him while under the influence of drugs just a few weeks before the incident on 15 April 2017. With respect to the previous incident, Defendant stated he loaned Mr. Locklear twenty dollars, and that Mr. Locklear stabbed him when he requested to be paid back. However, Defendant did not report the stabbing to law enforcement.

Concerning the shooting, Defendant recounted on 15 April 2017, Defendant and his girlfriend were together at the Residence. While Defendant was sitting alone in his vehicle in the driveway, Mr. Locklear approached and apologized for their previous altercation. In response, Defendant stated, "I don't want nothing else to do with you." Notwithstanding, Mr. Locklear continued to walk over to Defendant's vehicle, and as a result, Defendant left the Residence.

Later that night, Defendant returned to the Residence because his girlfriend forgot her "pocketbook." Upon arrival, Defendant's girlfriend "backed his car" into the driveway. Defendant waited in the front passenger seat while his girlfriend went inside to retrieve her pocketbook. While waiting, Mr. Locklear again approached Defendant, this time, with three knives—one on his belt and two in his hands. Upon observing Mr. Locklear put two knives in one hand and a sheetrock knife in the other, Defendant stated, "what you doing with them there?" Mr. Locklear then opened the sheetrock knife blade and said, "[w]hat's the deal, you SOB," to which Defendant stated, "look, I ain't wanting to hurt you, so if you take one step closer to me, . . . I'm going to have to lay you down, . . . it's as simple as that." Eventually, Defendant "saw

[Mr. Locklear] take one step and lunge at [him]" with a knife. As a result, Defendant "reached over and . . . shot [Mr. Locklear] twice" with a pistol that was in his lap.

Defendant then exited the vehicle and "h[eld] the pistol on [Mr. Locklear]" in case he tried to get back up, but Defendant maintained that he "wasn't going to shoot him." Defendant's girlfriend then exited the Residence, and Defendant told her to "call the law." But before she could contact law enforcement, Defendant's girlfriend looked across the street at Mr. Locklear's home and observed "ten to fifteen people . . . with baseball bats, . . . wood sticks, and knives." In response, Defendant testified that his girlfriend said, "we need to hurry up and get out of here." Defendant then stated, "I did not have enough bullets for them, you know what I mean? To protect myself." Defendant and his girlfriend drove away from the Residence. As they drove off, Defendant said he fired his pistol in the air.

At the close of the State's evidence, Defendant moved the trial court to dismiss the second-degree murder charge, arguing there was "insufficient evidence to find that any of the elements of the crime exist." The trial court denied the motion. Defendant renewed his motion to dismiss at the close of all evidence, which the trial court again denied. The jury ultimately convicted Defendant of voluntary manslaughter—a lesser included offense of second-degree murder. The trial court sentenced Defendant to 51–74 months in the Division of Adult Correction. That same day, Defendant gave oral notice of appeal.

## II. Jurisdiction

This Court has jurisdiction over Defendant's appeal pursuant to N.C. Gen. Stat. §§ 7A-27(b)(1) ("From any final judgment of a superior court . . . .") and 15A-1444(a) (2023) ("A defendant who has entered a plea of not guilty to a criminal charge, and who has been found guilty of a crime, is entitled to appeal as a matter of right when final judgment has been entered.").

## III. Analysis

Defendant contends the trial court erred in denying his motion to dismiss for insufficient evidence. He also asserts the trial court committed plain error by failing to properly instruct the jury regarding his right to self-defense. Defendant further maintains he received IAC because his trial attorney failed to request certain pattern jury instructions and failed to object to the aggressor and excessive force jury instructions.

### A. Motion to Dismiss

Defendant argues the trial court erred by denying his motion to dismiss because the State's evidence was insufficient to support the charge of second-degree murder or his conviction for voluntary manslaughter. We disagree.

"Whether the State presented substantial evidence of each essential element of the offense is a question of law; therefore, we review the denial of a motion to dismiss de novo." *State v. Tucker*, 380 N.C. 234, 236, 867 S.E.2d 924, 927 (2022) (citation omitted). "'Under a *de novo* review, the court considers the matter anew and

freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (citation omitted).

"When ruling on a defendant's motion to dismiss, the trial court must determine whether there is substantial evidence (1) of each essential element of the offense charged, and (2) that the defendant is the perpetrator of the offense." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). "If so, the motion is properly denied." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Cummings*, 46 N.C. App. 680, 683, 265 S.E.2d 923, 925 (1980) (citations omitted). "In considering such motions, the trial court is concerned only with the sufficiency of the evidence to take the case to the jury and not with its weight." *State v. Malloy*, 309 N.C. 176, 178, 305 S.E.2d 718, 720 (1983). When "reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993). That said, "[c]ontradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve." *Id.*

"Voluntary manslaughter is the unlawful killing of a human being without malice, premeditation or deliberation." *State v. Robbins*, 309 N.C. 771, 777, 309 S.E.2d 188, 191 (1983). "Voluntary manslaughter requires the State to prove two elements: (1) Defendant killed [the victim] by an intentional and unlawful act

and (2) Defendant's act was the proximate cause of [the victim's] death." *State v. Coleman*, 254 N.C. App. 497, 501, 803 S.E.2d 820, 823 (2017) (citations and internal quotations omitted). Since Defendant does not attack the sufficiency of any other elements pertaining to voluntary manslaughter, we solely address whether the State put on enough evidence to allow a jury to infer that he did not act in self-defense. *See State v. Hamilton*, 77 N.C. App. 506, 513, 335 S.E.2d 506, 511 (1985) ("The State bears the burden of proving that [the] defendant did not act in self-defense."). "To survive a motion to dismiss, the State must . . . present sufficient substantial evidence which, when taken in the light most favorable to the State, is sufficient to convince a rational trier of fact that [the] defendant did not act in self-defense." *Id.*

Here, the State presented substantial evidence that Defendant did not act in self-defense. The evidence from the State tends to show that once Mr. Locklear made it to the vehicle's window, he "kneeled down, . . . look[ed] at the tools from the interior light of the car, and . . . [stated] this is a nice knife." Although Defendant's interview contradicts this testimony and states that Mr. Locklear attacked him with the sheetrock knife, "[c]ontradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve." *Barnes*, 334 N.C. at 75, 430 S.E.2d at 918; *State v. Jordan*, 333 N.C. 431, 439, 426 S.E.2d 692, 697 (1993); *State v. Graves*, 343 N.C. 274, 278, 470 S.E.2d 12, 15 (1996).

In addition, at trial, a pathologist testified that the exit paths of the gunshot wounds were lower than the entrance paths, consistent with the eyewitness

testimony that Mr. Locklear was shot while bent over:

> Q. And going back to the first wound to the chest, you said it went through the heart and the lung. Can you explain what direction it entered and where it exited?
>
> A. It . . . was going from front to back. So entrance on the anterior side of the body, exit on the back of the body. So it entered the heart from the anterior surface and exited through the posterior surface of the heart and then went through, I believe it was, the right lower lobe of the lung and exited the back, went through the back of the ribcage and through the muscle and then skin.
>
> Q. So through and down?
>
> A. Correct.
>
> Q. What about the second wound?
>
> A. The second wound, again, goes from front to back. It goes through the front part of the muscle on the left shoulder through the big bone in the left shoulder, out the muscle in the back of the arm and then out through the back.
>
> Q. And that was also front and down?
>
> A. Correct.

The thus State presented substantial evidence allowing the jury to infer that Defendant "did not act in self-defense" when he shot Mr. Locklear. *Hamilton*, 77 N.C. App. at 513, 335 S.E.2d at 511. Viewing this evidence in the light most favorable to the State, the trial court did not commit error by denying Defendant's motion to dismiss for insufficiency of the evidence. *Barnes*, 334 N.C. at 75, 430 S.E.2d at 918.

## B. Jury Instructions

Defendant submits the trial court plainly erred by "failing to properly instruct

the jury regarding [his] right to self-defense." Defendant maintains that the trial court should have instructed the jury on the castle and stand your ground doctrines. Additionally, Defendant asserts the trial court erroneously gave an aggressor instruction since there was insufficient evidence showing he was the aggressor. Finally, Defendant maintains that the trial court erroneously instructed the jury "that [he] did not have the right to use excessive force."

"Our appellate rules make clear that 'to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion[.]'" *State v. Scarboro*, 287 N.C. App. 184, 186, 882 S.E.2d 139, 142 (2022) (quoting N.C. R. App. P. 10(a)(1)). "Unpreserved issues relating to jury instructions in criminal cases may nevertheless be reviewed for plain error where 'the judicial action questioned is specifically and distinctly contended to amount to plain error.'" *Scarboro*, 287 N.C. App. at 186, 882 S.E.2d at 142 (quoting N.C. R. App. P. 10(a)(4)); *State v. Smith*, 225 N.C. App. 471, 474, 736 S.E.2d 847, 850 (2013) ("Jury instructions not challenged at trial are normally reviewed for plain error.").

To establish "plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error 'had a probable impact on the jury's finding that the defendant was guilty.'" *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations omitted). Plain error is "applied cautiously and only in the exceptional case," where the error

"seriously affect[s] the fairness, integrity or public reputation of judicial proceedings[.]" *Id.* (citing *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)).

"The jury charge is one of the most critical parts of a criminal trial." *State v. Coley*, 375 N.C. 156, 159, 846 S.E.2d 455, 458 (2020) (citation omitted). "It is the duty of the trial court to instruct the jury on all substantial features of a case raised by the evidence." *State v. Shaw*, 322 N.C. 797, 803, 370 S.E.2d 546, 549 (1988). "[W]here competent evidence of self-defense is presented at trial, the defendant is entitled to an instruction on this defense, as it is a substantial and essential feature of the case, and the trial judge must give the instruction even absent any specific request by the defendant." *Coley*, 375 N.C. at 159, 846 S.E.2d at 458 (quoting *State v. Morgan*, 315 N.C. 626, 643, 340 S.E.2d 84, 95 (1986)); *State v. Deck*, 285 N.C. 209, 215, 203 S.E.2d 830, 834 (1974) ("When supported by competent evidence, self-defense unquestionably becomes a substantial and essential feature of a criminal case.").

"Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding." *State v. Chukwu*, 230 N.C. App. 553, 561, 749 S.E.2d 910, 916 (2013) (citation omitted). "Once a showing is made that the defendant has presented such competent evidence, 'the court must charge on this aspect even though there is contradictory evidence by the State or discrepancies in defendant's evidence.'" *Coley*, 375 N.C. at 159, 846 S.E.2d at 458 (quoting *State v. Dooley*, 285

N.C. 158, 163, 203 S.E.2d 830, 834 (1974)). "In determining whether the evidence is sufficient to entitle the defendant to jury instructions on a defense, the trial court must consider the evidence in the light most favorable to the defendant." *State v. Kuhns*, 260 N.C. App. 281, 284, 817 S.E.2d 828, 830 (2018); *see also Coley*, 375 N.C. at 159, 846 S.E.2d at 458 ("In determining whether a defendant has presented competent evidence sufficient to support a self-defense instruction, we take the evidence as true and consider it in the light most favorable to the defendant.").

### 1. *Castle Doctrine*

Defendant first asserts "there was sufficient evidence to entitle [him] to jury instructions regarding his right to self-defense pursuant to N.C. Gen. Stat. § 14-51.2(b) [(2023)]." Defendant maintains that the evidence shows: (1) he was the lawful occupant of his motor vehicle; (2) Mr. Locklear was unlawfully and forcefully entering the vehicle; (3) Defendant reasonably believed Mr. Locklear was unlawfully and forcefully entering the vehicle; (4) Mr. Locklear attempted to remove Defendant against his will from the vehicle; and (5) Defendant reasonably believed a forcible act was occurring. *See id.* As such, Defendant asserts the trial court plainly erred by failing to deliver, *ex mero motu,* a castle doctrine pattern jury instruction under N.C.P.I.–Crim. 308.80. We disagree.

"A man's [motor vehicle] . . . is his castle, and his castle he is entitled to protect against invasion." *State v. Phillips*, 386 N.C. 513, 517, 905 S.E.2d 23, 27 (2024) (quoting *State v. Gray*, 162 N.C. 608, 613, 77 S.E. 833, 835 (1913)). "Though the castle

doctrine enshrines the right to use lawful defensive force, it is not a license to kill." *State v. Copley*, 386 N.C. 111, 123, 900 S.E.2d 904, 914 (2024). A lawful occupant of a motor vehicle is "presumed to have held a reasonable fear of imminent death or serious bodily harm to himself . . . when using defensive force that is intended or likely to cause death or serious bodily harm" if he demonstrates two things:

> (1) The person against whom the defensive force was used was in the process of unlawfully and forcefully entering, or had unlawfully and forcibly entered, a home, motor vehicle, or workplace, or if that person had removed or was attempting to remove another against that person's will from the home, motor vehicle, or workplace.
>
> (2) The person who uses defensive force knew or had reason to believe that an unlawful and forcible entry or unlawful and forcible act was occurring or had occurred.

N.C. Gen. Stat. § 14-51.2(b)(1)–(2).

"The castle doctrine's primary legal protection—the presumption of reasonable fear—will only apply when the defendant satisfies the specific statutory requirements as detailed above." *Phillips*, 386 N.C. at 525, 905 S.E.2d at 31–32. That said, "[a] person who unlawfully and by force enters or attempts to enter a person's . . . motor vehicle . . . is presumed to be doing so with the intent to commit an unlawful act involving force or violence." N.C. Gen. Stat. § 14-51.2(d). "A lawful occupant within his . . . motor vehicle . . . does not have a duty to retreat from an intruder in the circumstances described in this section." *Id.* § 14-51.2(f). Additionally, "[a] person who uses force as permitted by this section is justified in using such force and is

immune from civil or criminal liability for the use of such force" subject to an

exception not at issue here. *Id.* § 14-51.2(e).

However, this statutory presumption is rebuttable under subsection 14-51.2(c)

and does not apply in any of the following circumstances:

> (1) The person against whom the defensive force is used
> has the right to be in or is a lawful resident of the home,
> motor vehicle, or workplace, such as an owner or lessee,
> and there is not an injunction for protection from domestic
> violence or a written pretrial supervision order of no
> contact against that person.
>
> (2) The person sought to be removed from the home, motor
> vehicle, or workplace is a child or grandchild or is otherwise
> in the lawful custody or under the lawful guardianship of
> the person against whom the defensive force is used.
>
> (3) The person who uses defensive force is engaged in,
> attempting to escape from, or using the home, motor
> vehicle, or workplace to further any criminal offense that
> involves the use or threat of physical force or violence
> against any individual.
>
> (4) The person against whom the defensive force is used is
> a law enforcement officer or bail bondsman who enters or
> attempts to enter a home, motor vehicle, or workplace in
> the lawful performance of his or her official duties, and the
> officer or bail bondsman identified himself or herself in
> accordance with any applicable law or the person using
> force knew or reasonably should have known that the
> person entering or attempting to enter was a law
> enforcement officer or bail bondsman in the lawful
> performance of his or her official duties.
>
> (5) The person against whom the defensive force is used (i)
> has discontinued all efforts to unlawfully and forcefully
> enter the home, motor vehicle, or workplace and (ii) has
> exited the home, motor vehicle, or workplace.

*Id.* § 14-51.2(c)(1)–(5).

"[W]hen a defendant asserts the castle doctrine defense at trial, the jury must first determine whether the defendant is entitled to the presumption as set forth in section 14-51.2(b)." *Phillips*, 386 N.C. at 525, 905 S.E.2d at 32. In the event "the jury finds that the defendant is not entitled to the presumption, the castle doctrine statute does not apply[,] and the jury must determine the defendant's culpability under section 14-51.3, the general self-defense statute." *Id.*

In the instant case, Defendant did not raise a castle doctrine defense at trial. Instead, he maintains the trial court should have offered the rebuttable presumption to the jury on its own accord since it was a substantial feature of the case arising from the evidence. Our review leads us to conclude that, in a light most favorable to Defendant, there is insufficient competent evidence to warrant a castle doctrine instruction by the trial court *ex mero motu*. Contrary to Defendant's urging, no evidence shows Mr. Locklear was in the process of or had unlawfully and forcefully entered Defendant's motor vehicle at the time of the shooting. Nor is there any evidence that Mr. Locklear attempted to unlawfully and forcibly remove Defendant from the motor vehicle. Competent evidence shows Mr. Locklear was crouched down at the time he was shot by Defendant. Also, Defendant's video recorded interview makes no mention of Mr. Locklear entering the vehicle or trying to remove Defendant from the vehicle. As such, a reasonable mind could not find that the first prong

warranting a castle doctrine instruction had been met, and the trial court did not commit plain error by omitting a castle doctrine instruction when charging the jury.

## 2. *Stand Your Ground*

Defendant next contends the trial court plainly erred by failing to instruct the jury on the "stand your ground" doctrine codified under N.C. Gen. Stat. § 14-51.3 (2023). Defendant maintains, "[i]n the light most favorable to [him], there was sufficient evidence to entitle [him] to jury instructions" because he had no "duty to retreat." *See id.* § 14-51.3(a). Defendant asserts the evidence shows he was in a place where he had a lawful right to be and reasonably believed deadly force was necessary to prevent imminent death or great bodily harm to himself. Thereby, Defendant asserts the trial court committed plain error by failing to deliver, *ex mero motu*, pattern jury instructions pursuant to N.C.P.I.–Crim. 308.10 and 206.30.

Under N.C. Gen. Stat. § 14-51.3(a),

> a person is justified in the use of deadly force and does not have a duty to retreat in any place he or she has the lawful right to be if either of the following applies:
>
> (1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another.
>
> (2) Under the circumstances permitted pursuant to [N.C. Gen. Stat. §] 14-51.2.

In this case, it is undisputed that Defendant had a lawful right to be in his car at the Residence, as reflected by the jury instructions below. Furthermore, since we

have already determined that Defendant is not entitled to an instruction under subsection 14-51.2(b), the trial court could have only plainly erred to the extent there was competent record evidence showing Defendant reasonably believed using such force was necessary to prevent imminent death or great bodily harm to himself. *See id.; see also Morgan*, 315 N.C. at 643, 340 S.E.2d at 95 ("[W]here competent evidence of *self-defense* is presented at trial, the defendant is entitled to an instruction on this defense . . . and the judge must give the instruction even absent any specific request by the defendant.").

At trial, Defendant did not request a stand your ground instruction. Notwithstanding, the trial court charged the jury on the stand your ground doctrine as follows:

> [D]efendant would be excused of second-degree murder on the ground of self-defense if, first, it appeared to [Defendant] and [he] believed it to be necessary to use deadly force against the victim in order to save [himself] from death or great bodily harm.
>
> Second, the circumstances as they appear to [Defendant] at the time were sufficient to create such a belief in the mind of a person of ordinary firmness. It is for you, the jury, to determine the reasonableness of [Defendant's] belief from the circumstances as they appeared to [him] at the time.
>
> . . . .
>
> Further, the defendant has no duty to retreat in a place where the defendant has a lawful right to be. The defendant would have a lawful right to be in the defendant's motor vehicle.

The jury instruction offered by the trial court is consistent with the language of subsection 14-51.3(a)(1). And since we have already determined Defendant cannot satisfy the presumption contained in subsection 14-51.2(b), we hold the trial court did not commit plain error. The trial court properly allowed the jury to determine whether Defendant was entitled to stand his ground by instructing the jury as described above. *See Morgan*, 315 N.C. at 646, 340 S.E.2d at 97. Defendant's assignment of plain error is overruled.

### 3. *Excessive Force*

Defendant next contends the trial court plainly erred by "instructing the jury that Defendant did not have the right to use excessive force" because under our castle doctrine statute, "excessive force is impossible unless the State rebuts the presumption." Since Defendant cannot demonstrate entitlement to a castle doctrine instruction and excessive force is a question for the jury when a defendant stands their ground, the trial court's delivery of an excessive force instruction does not amount to plain error.

"Under the Castle Doctrine, excessive force is impossible unless th[e] State rebuts the Castle Doctrine presumption by proving one of the five circumstances listed in section 14-51.2(c)." *Phillips*, 386 N.C. at 527, 905 S.E.2d at 33 (citation and quotation marks omitted). "[T]he jury should not . . . consider[ ] the proportionality of [the] defendant's force unless the jury found that either (1) [the] defendant did not qualify to invoke the castle doctrine, or (2) [the] defendant qualified, but the State

properly rebutted the presumption of reasonable fear." *Id.* at 527–28, 905 S.E.2d at 33. That said, "the proportionality rule inherent [to] the requirement that the defendant not use excessive force continues to exist even in instances in which a defendant is entitled to stand his or her ground." *State v. Benner*, 380 N.C. 621, 636, 869 S.E.2d 199, 209 (2022). Phrased another way, "the use of deadly force cannot be excessive and must still be proportional even when the defendant has no duty to retreat and is entitled to stand his ground[.]" *State v. Walker*, 286 N.C. App. 438, 447, 880 S.E.2d 731, 738 (2022).

Here, the trial court instructed:

> A defendant does not have the right to use excessive force. A defendant uses excessive force if the defendant uses more force than reasonably appeared to the defendant to be necessary at the time of the killing. It is for you, the jury, to determine the reasonableness of the force used by the defendant under all of the circumstances as they appeared to the defendant at the time.

Since Defendant never raised a castle doctrine defense at trial and the evidence does not qualify him for such a defense, the trial court's excessive force instruction cannot be erroneous on Defendant's disputed grounds. *See Phillips*, 386 N.C. at 527–28, 905 S.E.2d at 33. Moreover, since the trial court delivered a stand your ground instruction to the jury, it was required to include a proportionality instruction since "the use of deadly force cannot be excessive and must still be proportional even when the defendant has no duty to retreat and is entitled to stand his ground[.]" *Walker*, 286 N.C. App. at 447, 880 S.E.2d at 738. Defendant's assignment of error is

accordingly overruled.

## 4. Aggressor Doctrine

Defendant further contends the trial court plainly erred by "instructing the jury on the aggressor doctrine" because there was a lack of competent evidence supporting its introduction. We disagree.

"[T]he defenses pursuant to N.C. [Gen. Stat.] §§ 14-51.2 and 14-51.3 '[are] not available to someone who [i]nitially provokes the use of force against himself or herself.' This is what is commonly known as the aggressor doctrine." *State v. Hicks*, 385 N.C. 52, 60, 891 S.E.2d 235, 241 (2023) (second and third brackets in original) (quoting N.C. Gen. Stat. § 14-51.4 (2021)); *State v. Hunter*, 315 N.C. 371, 374, 338 S.E.2d 99, 102 (1986) (citation omitted) ("[A] person is entitled under the law of self-defense to harm another only if he is 'without fault in provoking, or engaging in, or *continuing a difficulty with another.'"*). The

> [j]ustifications pursuant to sections 14-51.2 and 14-51.3 may still be available to the initial aggressor if the victim employed force "so serious that the person using defensive force reasonably believes that he or she was in imminent danger of death or serious bodily harm, [they] had no reasonable means to retreat, and the use of force . . . was the only way to escape the danger," N.C.[Gen. Stat.] § 14-51.4(2)(a), or if the initial aggressor "withdraws, in good faith, from physical contact with the person who was provoked, and indicates clearly that he or she desires to withdraw and terminate the use of force, but the person who was provoked continues or resumes the use of force[,]" N.C.[Gen. Stat.] § 14-51.4(2)(b).

*Hicks*, 385 N.C. at 60, 891 S.E.2d at 241.

"Broadly speaking, the defendant can be considered the aggressor when she 'aggressively and willingly enters into a fight without legal excuse or provocation.'" *State v. Vaughn*, 227 N.C. App. 198, 202, 742 S.E.2d 276, 279 (2013) (quoting *State v. Wynn*, 278 N.C. 513, 519, 180 S.E.2d 135, 139 (1971)). A defendant may also be classified as an aggressor if there is "evidence from which the jury could find that defendant voluntarily entered a fight with the deceased based on her use of abusive language calculated to bring on such a fight . . . ." *State v. Temples*, 74 N.C. App. 106, 109, 327 S.E.2d 266, 268 (1985).

"In determining whether a self-defense instruction should discuss the aggressor doctrine, the relevant issue is simply whether the record contains evidence from which the jury could infer that the defendant was acting as an aggressor at the time that he or she allegedly acted in self-defense." *State v. Mumma*, 372 N.C. 226, 239 n.2, 827 S.E.2d 288, 297 (2019) (citation and internal quotation marks omitted). Our Courts look to a variety of factors when determining whether somebody was an aggressor, "including the circumstances that precipitated the altercation; the presence or use of weapons; the degree and proportionality of the parties' use of defensive force; the nature and severity of the parties' injuries; or whether there is evidence that one party attempted to abandon the fight." *State v. Corbett*, 269 N.C. App. 509, 566, 839 S.E.2d 361, 403 (2020) (citations omitted). "[T]he evidence must be considered in the light most favorable to the State. The State must be given the benefit of every reasonable inference to be drawn from the evidence and any

contradictions in the evidence are to be resolved in favor of the State." *Hicks*, 385 N.C. at 61, 891 S.E.2d at 241 (citations omitted). "Where . . . there is conflicting evidence on whether the defendant acted as an aggressor and the jury could reasonably draw the inference either way, the State gets the benefit of the doubt." *Id.* at 61, 891 S.E.2d at 242.

Here, the trial court instructed:

> The defendant will not be guilty of any murder or manslaughter if the defendant acted in self-defense and if the defendant was not the aggressor in provoking the fight and did not use excessive force under the circumstances. One enters a fight voluntarily if one uses towards one's opponent abusive language which considering all the circumstances is calculated and intended to provoke a fight. If the defendant voluntarily and without provocation entered the fight, the defendant would be considered the aggressor unless the defendant thereafter attempted to abandon the fight and gave notice to the deceased that the defendant was doing so. In other words, a person who uses defensive force is justified if the person withdraws in good faith from physical contact with a person who was provoked and clearly indicates that he desires to withdraw and terminate the use of force to the person who was provoked continues or resumes to use force. A person is also justified in using defensive force when the force used by the person who was provoked is so serious that the person using defensive force reasonably believes that he was in imminent danger of death or serious bodily harm, the person using defensive force had no reasonable means to retreat, and the use of force likely to cause death or serious bodily harm was the only way to escape the danger.

The trial court further instructed, "[y]ou may convict the defendant of voluntary manslaughter if the State proves that [Defendant] was simply the aggressor without

murderous intent in bringing on the fight in which the deceased was killed or that [Defendant] used excessive force."

Our review of the record leads us to hold, in a light most favorable to the State, there was sufficient "evidence from which the jury could infer that [Defendant] was acting as an aggressor at the time that he . . . allegedly acted in self-defense." *Mumma*, 372 N.C. at 239 n.2, 827 S.E.2d at 297 (citation and internal quotation marks omitted). Competent evidence presented at trial demonstrates that at the time of the shooting, Mr. Locklear neither threatened to harm nor rob Defendant. Although Defendant's recorded interview recounts that Mr. Locklear precipitated the altercation, conflicts in the evidence are best left for resolution by the jury. *See Hicks*, 385 N.C. at 61, 891 S.E.2d at 242 ("Where . . . there is conflicting evidence on whether the defendant acted as an aggressor and the jury could reasonably draw the inference either way, the State gets the benefit of the doubt.").

Accordingly, we hold the trial court did not commit error by instructing the jury on the aggressor doctrine. The conflict between Defendant's recorded interview and Mr. Lowery's testimony allows a juror to draw a reasonable inference either way, and as such, "the State gets the benefit of the doubt," and the matter was properly submitted for resolution by the jury. *Id.*

## C. Ineffective Assistance of Counsel

Defendant last contends that he received IAC because his trial attorney failed to request instructions for the castle and stand your ground doctrines. He also asserts

that his trial attorney rendered IAC by failing to object to the trial court's delivery of the aggressor and excessive force instructions. But since we already determined that the trial court did not err by omitting the instructions and properly delivered the aggressor and excessive force instructions, Defendant cannot demonstrate the first prong of an IAC claim—that his attorney rendered deficient performance. *See State v. Oglesby*, 382 N.C. 235, 242, 876 S.E.2d 249, 256 (2022) (citation omitted) ("To prevail on an IAC claim, a defendant must generally satisfy the two-prong test set forth in *Strickland*: First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."); *see also State v. Fair*, 354 N.C. 131, 167, 557 S.E.2d 500, 525 (2001) ("Attorney conduct that falls below an objective standard of reasonableness and prejudices the defense denies the defendant the right to effective assistance of counsel."). Accordingly, we decline further review and hold that Defendant received effective assistance of counsel at trial.

## IV.    Conclusion

For the foregoing reasons, we hold the trial court did not commit error by denying Defendant's motion to dismiss and did not commit plain error when instructing the jury on self-defense. Additionally, we hold Defendant cannot

- 24 -

establish a successful IAC claim.


NO ERROR.

Judge COLLINS concurs.

Judge STROUD concurs in result only.

Report per Rule 30(e).